[Nos. 5561–9–II; 5592–9–II.   Division Two.   March 29, 1983.]

THE STATE OF WASHINGTON, *Respondent,* v. RANDY
L. DUGGER, *Appellant.*

*Stephen L. Olson,* for appellant.

*Curtis M. Janhunen, Prosecuting Attorney,* and *W. David Rovang, Deputy,* for respondent.

PETRIE, J.—Defendant, Randy L. Dugger, appeals (1) from a judgment and sentence following his conviction by jury verdict of the crime of third degree assault by assaulting a deputy sheriff with intent to prevent and resist lawful apprehension and detention (RCW 9A.36.030(1)(a)); and (2) from a judgment and sentence following revocation of probation previously granted upon his plea of guilty to the crime of second degree burglary. He contends the trial court erred (1) in the assault case, by denying (a) his motion for a new trial and (b) his motion to dismiss the charge, and (2) in the burglary case, by revoking his probation solely on the basis of the conviction in the assault case. We find no error and affirm both sentences.

We consider first his motion to dismiss the assault charge. The information in that case alleges that on December 26, 1980, defendant, "with intent to prevent and resist . . . lawful apprehension or detention," assaulted two deputy sheriffs. Dugger contends the State failed to prove that the deputies' efforts to effect his apprehension and detention were lawful. More specifically, he contends that the deputies, though purporting to arrest him on the strength of an existing, valid warrant, did not have the warrant in their possession and did not comply with the provisions of RCW 10.31.030. That statute requires law enforcement officers to "declare that the warrant does presently exist and will be shown to the defendant as soon as possible on arrival at the place of intended confinement".

On December 26, Dugger, his fiancee and infant son were visiting at the home of his fiancee's mother. They had come down from Vancouver, British Columbia, to Grays Harbor County to spend the Christmas holidays with their families. Deputy Morgan, on assignment to arrest Dugger on the

strength of a bench warrant, approached the front door of the residence at approximately 5 p.m. and saw defendant through a window. The fiancee's mother responded to Morgan's knock on the door, initially denied that Dugger was present, and then stated that he had departed out the back door.

In the meantime, Deputy Healy approached with his search dog and positioned himself so that he could observe the back door of the residence. He "caught a glimpse of what appeared to be a male subject leaving the back door." Healy ran to the edge of a wooded area behind the house and yelled out that he was from the sheriff's department, and commanded Dugger to halt. When he still heard the brush breaking in the woods, he called out, "Halt or I'll let the dog loose." When he still heard the brush breaking he commanded the dog "to track." Approximately 200 yards into the woods, the dog spotted Dugger in a draw, lying prone. When Healy caught up and finally saw Dugger on the ground despite the fact it was "very dark," he drew his service revolver and told Dugger to stand up and turn around. Healy handcuffed Dugger's hands behind his back, and they backtracked to the residence. During that trek out of the woods, despite the fact that both men had difficulty walking over obstacles and logs causing both to fall a few times, Dugger "cooperated but kept insisting he wasn't Randy Dugger." After they reached the edge of the woods, Healy turned defendant over to Morgan and led his dog to his patrol car.

Morgan took Dugger by the arm and started to walk toward his patrol car at the front of the house. Morgan testified that Dugger "pulled away and I took him back," and that Dugger said he wanted to see his fiancee and child. Morgan told him he could do that after they got into "the light where it's more secure." Dugger expressed his dislike for Morgan through several expletives and wanted to know, "[w]ho snitched?" As they got closer to Morgan's patrol car Dugger renewed "swearing at me and pulling away, you know, with redoubled efforts like he was getting pretty

excited." Morgan then decided to place Dugger in the patrol car before letting him see his fiancee and child.

What happened next is vigorously disputed. The deputies testified that they were kicked and butted by Dugger but that he was subsequently subdued and placed somewhat unceremoniously in Morgan's patrol car. Dugger testified that he resisted arrest, but that he did not assault the deputies. In any event, any rational jury could find beyond a reasonable doubt that after Dugger's arrest and detention he did intentionally touch or strike the deputies during their attempt to detain him.

Healy testified that he "advised Randy of the warrant in the woods," and Morgan testified that while he was transporting Dugger to the county jail, Dugger asked him if he could see the warrant for his arrest. Morgan did not specifically tell Dugger that he would show Dugger the warrant, but he did advise Dugger that "it is common procedure that he would be shown the warrant when he was brought into the facility." The bench warrant introduced as an exhibit indicates on its face that it was issued January 25, 1980, and received by the Sheriff of Grays Harbor County on the same date. Neither deputy had the warrant in his possession when Dugger was arrested, and the record does not reveal that it was ever shown to Dugger.

RCW 10.31.030 provides in part:

> The officer making an arrest must inform the defendant that he acts under authority of a warrant, and must also show the warrant: *Provided,* That if the officer does not have the warrant in his possession at the time of arrest he shall declare that the warrant does presently exist and will be shown to the defendant as soon as possible on arrival at the place of intended confinement: . . .

This statute imposes upon an arresting officer a twofold duty when he does not have the warrant in his possession: (1) a duty to tell the arrestee that a warrant for his arrest exists; and (2) a duty to advise the arrestee that it will be shown to him as soon as possible after he is jailed.

Dugger contends that no lawful arrest has been made

until the arresting officer performs both these duties. Because Deputy Healy performed only the first duty and Deputy Morgan did not perform the second duty until after the assault had occurred, if at all, Dugger contends the State failed to prove a necessary element of the crime charged. We disagree.

Although Healy's original contact with Dugger in the woods involved an appreciable amount of tension and an immediate concern that the arrestee be secured so as to avoid further flight and possible escape, Healy had little opportunity during the relatively cooperative, but laborious, trek out of the woods in the dark to perform the second duty. When Morgan assumed control of the prisoner, the complexion of the custody changed drastically. Yet one of Dugger's immediate concerns was, "[w]ho snitched?" He knew that he was a probationer on a previous burglary charge in Grays Harbor County. We are not told the status of that probation, but the inference is that Dugger was aware that his temporary presence in the county—as opposed to his relatively safe haven in Canada—would expose him to possible arrest if his presence should be detected by the authorities.

The Legislature's concerns for imposing the two conditions appear to be that an arrestee be advised of the authority and reason for his arrest at the earliest time following his arrest. Here, Dugger was told that he was being arrested on the authority of a warrant for his arrest, and he seems to have been aware of the reason behind the issuance of that warrant. We find that the arresting officers sufficiently complied with the statute to have accomplished its purposes. See State v. Singleton, 9 Wn. App. 327, 511 P.2d 1396 (1973). A rational jury could have found beyond a reasonable doubt that the assault was committed with intent to prevent or resist Dugger's lawful apprehension and detention.

We turn only briefly to Dugger's remaining assignments of error. He asserts the trial court erred by failing to grant his motion for mistrial following alleged prosecutorial mis-

conduct. He contends the trial deputy prosecutor erred by disobeying an order in limine imposed by the court prohibiting prosecutorial attempts to characterize Dugger as some sort of a desperado. The order was simply that the prosecutor could not use Dugger's previous burglary conviction to impeach him. Obviously, the prosecutor had to prove the validity of the arrest and, in doing so, had to prove the existence of the bench warrant.

The issue arose during Healy's direct testimony. After the prosecutor elicited from Healy that he took his dog with him, the prosecutor commented, "that seems rather extreme" and then inquired whether Healy always took his dog along when he arrests someone. The trial court sustained a defense objection to the question, and Healy then testified that he has had problems in the past when serving "several similar warrants with other people." When the prosecutor inquired what type of warrant that was, Healy responded, "[f]elony warrant." The trial court deferred ruling on a defense motion for mistrial and, instead, instructed the jury to disregard Healy's last remark. Later in the trial the bench warrant was introduced as an exhibit without objection.

The prosecution was certainly entitled to elicit from the witness that he was preparing to arrest Dugger on the authority of a bench warrant issued out of Grays Harbor County Superior Court. It is regrettable that Healy's response was subject to the interpretation that the warrant for Dugger's arrest was a felony warrant. Nevertheless, neither the prosecutor's question nor his tactics disobeyed the order in limine. Whatever trial error may have occurred by reason of Healy's response was cured both by the trial court's admonition and by introduction of the warrant itself. We find no prejudicial error warranting new trial as Dugger requests. *State v. Music,* 79 Wn.2d 699, 489 P.2d 159 (1971).

Finally, because defendant is not entitled to dismissal or new trial on the assault charge, the revocation of his probation of the burglary charge on the strength of this

assault was proper.
Judgment affirmed.

WORSWICK, A.C.J., and REED, J., concur.