[No. 14701-3-I.   Division One.   December 20, 1985.]

THE STATE OF WASHINGTON, *Respondent,* v. MARVIN S. EKKELKAMP, *Appellant.*

*C. M. Hassenstab* of *Washington Appellate Defender Association,* for appellant.

*Seth R. Dawson, Prosecuting Attorney,* and *S. Aaron Fine, Deputy,* for respondent.

RINGOLD, J.—A jury found Marvin S. Ekkelkamp guilty of third degree assault for striking police officers executing a warrant for his arrest. He appeals his conviction arguing that the State failed to prove every element of the crime and that the trial court erred by refusing to admit evidence of underlying irregularities in the issuance of the warrant. We find no error and affirm.

On August 2, 1983, Snohomish County Sheriff's deputies spotted Marvin Ekkelkamp near his automobile sales and repair business. The officers were aware of an outstanding warrant on Ekkelkamp and confirmed this by radio. The officers then relocated Ekkelkamp, who was approximately 50 yards away and ordered him to stop. In response, Ekkelkamp ran toward his house, which was located next to his business.

Ekkelkamp reached the house before the officers could catch up with him, and he locked the front door behind

him. Speaking through a glass window in the door, the officers informed Ekkelkamp that they had a warrant for his arrest and asked him to come out. Ekkelkamp refused, cursed the officers, and told them to leave his property. At some point, Ekkelkamp demanded to see the warrant, disbelieving that one existed. The officers explained that they did not have the warrant with them, but it had been confirmed by radio. Thereupon, Ekkelkamp proceeded to lock the remaining entrances to his house.

The officers then broke into the house, and Ekkelkamp assaulted the officers. A scuffle ensued and he had to be physically restrained. Ekkelkamp continued to resist after he was put in a patrol car, and he attempted to kick out the windows of the car. The officers then put him into leg irons. There is no evidence in the record that Ekkelkamp was ever shown the arrest warrant.

The arrest warrant was issued for Ekkelkamp's failure to appear in court to respond to a charge of third degree theft. At trial, he attempted to have the summons and the citation given him for third degree theft entered in evidence to demonstrate the warrant was improperly issued. The trial court refused to allow the defense to present evidence that the warrant was improperly issued. The citation given to Ekkelkamp was blank in the space provided for an appearance date. The summons issued to Ekkelkamp specified the date he was supposed to appear in court, but Ekkelkamp testified he never received it.

## COMPLIANCE WITH RCW 10.31.030

Ekkelkamp contends that the arrest was unlawful, because the officers failed to state they would show Ekkelkamp the warrant as soon as possible after arrival at the police station. The State responds that considering the violent resistance being given by Ekkelkamp they had no opportunity to tell him they would show him the warrant later.

■ RCW 10.31.030 governs the procedure for arrest without a warrant physically present, and provides in part:

The officer making an arrest must inform the defendant that he acts under authority of a warrant, and must also show the warrant: *Provided,* That if the officer does not have the warrant in his possession at the time of arrest he shall declare that the warrant does presently exist and will be shown to the defendant as soon as possible on arrival at the place of intended confinement . . .

This statute imposes a twofold duty upon an arresting officer when he does not have the warrant in his possession. First, the officer has a duty to tell the arrestee that a warrant for his arrest exists; second, there is a duty to advise the arrestee that it will be shown to him as soon as possible after he is jailed. *State v. Dugger,* 34 Wn. App. 315, 318, 661 P.2d 979 (1983). "The Legislature's concerns for imposing the two conditions appear to be that an arrestee be advised of the authority and reason for his arrest at the earliest time following his arrest." *Dugger,* at 319.

Ekkelkamp was told that the officers were acting under the authority of a warrant, satisfying the first duty imposed by the statute. After being informed that the officers were acting under proper authority, Ekkelkamp cursed and screamed at the officers that he did not believe them. Proper police practice should be to inform the arrestee that the arrest warrant will be shown to the arrestee as soon as possible after arriving at the jail. Given Ekkelkamp's uncooperative and violent behavior, however, the police officers were given no opportunity to advise him that the warrant would be shown to him at the jail. As in *Dugger,* at 319, "the arresting officers sufficiently complied with the statute to have accomplished its purposes."

## VALIDITY OF WARRANT

Ekkelkamp contends that the arrest was unlawful, because the warrant was improperly issued. He argues the trial court erred by not admitting evidence that demonstrated this. The State responds that the warrant was valid on its face and it is immaterial whether it was improperly issued.

Ekkelkamp was charged with assault in the third degree

under RCW 9A.36.030(1), which provides in part:

> Every person who, under circumstances not amounting to assault in either the first or second degree, shall be guilty of assault in the third degree when he:
> (a) With intent to prevent or resist the execution of any lawful process or mandate of any court officer or the lawful apprehension or detention of himself or another person shall assault another . . .

In *State v. Hoffman,* 35 Wn. App. 13, 16, 664 P.2d 1259 (1983) this court stated, "Under this statute, the State must establish that the officer's actions in apprehending or detaining the defendant were lawful."

It is undisputed that the warrant was valid on its face. In an analogous situation the Supreme Court, in *Bender v. Seattle,* 99 Wn.2d 582, 591, 664 P.2d 492 (1983), held that an officer is not liable for false arrest if the officer relied on a warrant which was valid on its face. "This rule serves to protect officers who execute warrants, because those officers generally are not in a position to fully know the underlying facts giving rise to the issuance of the warrant." *Bender,* at 591. It would be incongruous to hold that a person could not have a civil remedy for an arrest pursuant to a facially valid warrant, but could physically assault the messenger executing such a warrant.

A person may use only reasonable force to resist an unlawful arrest. *State v. Rousseau,* 40 Wn.2d 92, 241 P.2d 447 (1952). It is unreasonable to use any force to resist an unlawful arrest, when the only apparent threat to the arrestee is the loss of freedom. *Rousseau; State v. Goree,* 36 Wn. App. 205, 209, 673 P.2d 194 (1983). This rule supports the public interest in vindicating one's rights in the courts rather than resorting to physical violence. When a police officer executes a facially valid warrant, absent any knowledge of the infirmity on the part of the officer or physical danger to the arrestee, there should be no justification to assault the arresting officer.

One purpose of RCW 9A.36.030 is to prohibit assaultive behavior which interferes with the execution of lawful pro-

cess. *See State v. Jury,* 19 Wn. App. 256, 269, 576 P.2d 1302, *review denied,* 90 Wn.2d 1006 (1978). This objective is furthered by applying RCW 9A.36.030 to the present case. For the same reasons the *Bender* court held that a suit for false arrest cannot be maintained against an officer who executes a facially valid warrant, we hold that RCW 9A.36.030 is applicable to instances when an officer is acting pursuant to such a warrant.

The judgment and sentence is affirmed.

SWANSON and COLEMAN, JJ., concur.