UNITED STATES of America,
Appellant,

v.

Gerald Frank KROLL, Appellee.

No. 73–1058.

United States Court of Appeals,
Eighth Circuit.

Submitted May 18, 1973.

Decided July 10, 1973.

Sheryle L. Randol, Asst. U. S. Atty., Kansas City, Mo., for appellant.

Joseph J. Mulvilhill, Kansas City, Mo., for appellee.

Before VAN OOSTERHOUT, Senior Circuit Judge, HEANEY, Circuit Judge, and TALBOT SMITH, Senior District Judge.*

HEANEY, Circuit Judge.

At issue in this case is the validity of a warrantless search of an attache case which the defendant was about to carry aboard a commercial airliner. The search, conducted by a United States Marshal,[1] turned up a small quantity of an amphetamine, and the defendant was charged with possession of a controlled substance in violation of 21 U.S.C. § 844(a).

The District Court, 351 F.Supp. 148, found the following facts with respect to the search:

" * * * [O]n July 11, 1972, about 1:00 p. m., the defendant purchased a ticket for TWA Flight #338 to Chicago, Illinois. The ticket seller, through some process which was not fully described, determined that the defendant was a possible hijacker and asked him to produce his driver's license for identification. The number of the driver's license was written on the defendant's ticket, which was notice to the passenger security detail at the boarding gate that the defendant fit the hijacker profile and should be searched.

"The defendant then went to Gate 12 and was checked in. He then passed through the magnetometer, which was activated by the metal hinges and lock on the attache case he carried. The TWA security agent directed him to place the attache case on a table and open it for inspection. A United States Marshal was working with the TWA agent and watched the search. The Marshal became suspicious because the defendant did not open the file section in the upper part of the attache case and he stepped up, identified himself as a United States Marshal and directed the defendant to open the file section. In the file section the Marshal could observe part of an ordinary white business envelope approximately 9½ inches x 4 inches. The envelope, in the condition it existed in the attache case, was introduced in evidence and examined by the Court. It was light in weight, had a very small bulge, approximately ¼ inch thick and 2 inches across, at one end of the envelope and was otherwise limp and flat. The Marshal felt that the actions of the defendant were 'suspicious' and, therefore, asked the defendant to empty the contents of the envelope into the case. The envelope contained a small plastic bag, which

---

* Eastern District of Michigan, sitting by designation.

1. There is no dispute that the search in the present case was a governmental one, subject to the Fourth Amendment. Compare, United States v. Wilkerson, 478 F.2d 813 (8th Cir. 1973); United States v. Echols, 477 F.2d 37 (8th Cir. 1973); United States v. Burton, 475 F.2d 469 (8th Cir. 1973).

contained the amphetamine, and a partly-consumed marijuana cigarette."

After an evidentiary hearing, the District Court granted the defendant's pretrial motion to suppress the amphetamine, holding that while it was reasonable to inspect the defendant's attache case, it was not reasonable to inspect the contents of the envelope. The government has appealed.

■ Because the search was conducted without a warrant, the government is required to show that it was justified by exceptional circumstances. It attempts to meet this burden by contending, first, that the defendant consented to the search and, second, that it was a reasonable search for weapons or explosives.

### I. *Consent.*

■ The burden is upon the government to prove that "consent was, in fact, freely and voluntarily given." Bumper v. North Carolina, 391 U.S. 543, 548, 88 S.Ct. 1788, 1792, 20 L.Ed.2d 797 (1968). To sustain its burden, the government points out that warnings were posted at the airport advising passengers that they were subject to being searched prior to boarding aircrafts. It reasons that:

"* * * [W]here a person is clearly warned in advance that he will be searched and he still has time to withdraw as defendant did here, his conduct in seeking to board the plane must be inferred to include a free, voluntary and intelligent consent to be searched."

■ The District Court found that this did not constitute consent "in any meaningful sense." We agree. Compel-

ling the defendant to choose between exercising Fourth Amendment rights and his right to travel constitutes coercion; the government cannot be said to have established that the defendant freely and voluntarily consent to the search when to do otherwise would have meant foregoing the constitutional right to travel.[2] United States v. Meulener, 351 F.Supp. 1284, 1288 (C.D.Cal.1972); United States v. Lopez, 328 F.Supp. 1077, 1093 (E.D.N.Y.1971).

### II. *Search for Weapons and Explosives.*

The District Court found that no grounds had been established for believing that the defendant was carrying explosives or weapons, but stated that the inspection of the attache case was justified by the danger of air piracy.[3] It held, however, that inspection of the envelope's contents exceeded the scope of the search permissible under the circumstances. See, Terry v. Ohio, 392 U.S. 1, 18–20, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968).

The District Court stated:

"The Court concedes the difficulty in defining precisely what constitutes a [permissible] search. For our purposes, however, we will say that a [permissible] search is an inspection of that which may *reasonably* be deemed to conceal a weapon or explosives. Reasonableness, in this context, is a matter of probabilities. For instance, a shoe box in a suitcase is as likely a container for a handgun as the suitcase itself. On the other hand, a lipstick tube in a woman's purse, though it is certainly possible,

---

2. It might be suggested that a prospective airline passenger will not actually be deprived of his right to travel because there are alternative means of travel available. We do not find this argument persuasive "since, in many situations, flying may be the only practical means of transportation." McGinley & Downs, Airport Searches and Seizures—A Reasonable Approach, 41 Fordham L.Rev. 293, 322 (1972).

3. That this danger without more is sufficient to justify warrantless airport searches was rejected in United States v. Moreno, 475 F.2d 44, 47 (5th Cir. 1973) (dictum). But see, United States v. Bell, 464 F.2d 667, 675 (2nd Cir. 1972) (Friendly, J., concurring). It is not necessary for us to resolve this issue in this opinion. See, United States v. Wilkerson, *supra* (Heaney, J., concurring).

is not a likely container for nitroglycerin. * * *

"The need to search, however, may be enhanced by additional facts of which the searching officer is aware. That is to say, the generalized need to search can become particularized as additional facts become operative. For instance, if the searching officer finds an unusual device in a suitcase and the passenger cannot give an acceptable explanation for its presence, suspicions are reasonably raised and the need to search farther and more closely is enhanced. In this manner, a greater intrusion into a passenger's privacy is offset by a greater need to search. Simply put, an officer is limited at the initial stage by the probabilities of a situation and reasonable suspicion is required before the search may be expanded." (Emphasis included.)

The District Court then held that the probabilities of the situation were such that searching the envelope was unreasonable. It reasoned that given the size and condition of the envelope, and the small size of the bulge therein, the government had not established that it was reasonable to believe that it could contain a weapon or explosives—given the state of the art of miniaturization existing at the time of the search.

 We agree with the District Court. The Marshal's subjective testimony, based on his limited military experience, that nitroglycerin or other explosives could have been placed in the

envelope was not sufficient under the circumstances to establish that it was reasonable to examine the envelope's contents.[4] Indeed, his objective behavior at the time he requested the defendant to empty the envelope is consistent with the trial court's conclusion that the Marshal "was not searching for weapons of any kind that could be used to hijack the plane but was searching for contraband." If he, in fact, seriously believed that weapons or explosives were in the envelope, it is likely that he would have cleared the area of other persons, or have taken the case and envelope to an area away from the people. Compare, United States v. Moreno, 475 F.2d 44 (5th Cir. 1973); United States v. Lindsey, 451 F.2d 701 (3rd Cir. 1971).

 Furthermore, in this case, nothing developed during the course of inspecting the attache case to suggest that it contained weapons or explosives. The Marshal testified that he became suspicious because the defendant held the file section of the attache case closed and because the defendant shifted the case's position as the Marshal approached. We agree with the District Court that these gestures did not supply a sufficient evidentiary justification for believing that the defendant was transporting explosives or weapons. The gestures were ambiguous at best, and could just as easily have been the instinctive response of an innocent person protecting his privacy as a "guilty" person protecting weapons or explosives from discovery.

Affirmed.

---

4. The District Court noted in an amendment to its opinion that its opinion was based on:
 " * * * the present state of the art of miniaturization of dangerous explosive devices, based on all the information possible to secure at this time. * * * [It further noted that it was]

entirely conceivable that miniaturization of explosives of sufficient force to constitute a threat to an aircraft could, in the future, be developed to a degree that [might] invalidate the principles expressed [in its opinion]."
Our holding is similarly limited.