[No. 9639-4-III.   Division Three.   November 16, 1989.]

THE STATE OF WASHINGTON, *Respondent*, v. PAUL ROBERT SWEENEY, *Appellant*.

*John H. McKean,* for appellant (appointed counsel for appeal).

*Paul Klasen, Prosecuting Attorney,* and *Kenneth Jorgenson, Deputy,* for respondent.

SHIELDS, J.—Mr. Sweeney was found guilty of one count of possession and two counts of delivery of LSD. He was sentenced to 26 months for each count of delivery and 2 months for the count of possession, to be served concurrently. He appeals. We reverse and dismiss.

On June 15, 1988, Mr. Sweeney was enrolled in the Columbia Basin Job Corps in Moses Lake. A student leader in Mr. Sweeney's dormitory informed the dormitory supervisor, Mr. LePoidevin, that Mr. Sweeney was selling drugs

in the dormitory. Mr. LePoidevin, acting on other observations he had made, took Mr. Sweeney to the office of Sergio Valdez, the assistant corpsman supervisor. When questioned, Mr. Sweeney denied selling drugs. When asked, he granted permission for his locker to be searched. Mr. LePoidevin and Mr. Valdez did not pursue the search of Mr. Sweeney's locker, however, because they believed such a search would be futile. Mr. Sweeney was then ordered to empty his pockets. He complied. There were no drugs among the items emptied. Mr. Valdez then asked Mr. Sweeney's permission to search inside his pocket. Mr. Sweeney again complied. The search of Mr. Sweeney's pocket disclosed a minute piece of leaf, which Mr. Valdez and Mr. LePoidevin suspected, but did not verify, was marijuana. Because the search had still not uncovered the alleged drugs for which Mr. Valdez and Mr. LePoidevin were looking, Mr. Valdez ordered a strip search. Mr. Sweeney initially objected, but eventually permitted the strip search upon Mr. Valdez's insistence that he had authority to do so. The search revealed a vial containing an LSD tablet in Mr. Sweeney's undershorts.

Mr. Valdez then questioned Mr. Sweeney for approximately 1 hour 15 minutes, during which time he never informed Mr. Sweeney of his *Miranda* rights. Mr. Sweeney was told that things would "go easier" on him if he confessed to Job Corps officials rather than the police. Eventually, Mr. Sweeney admitted selling two LSD tablets and was told to sign a confession statement. He did so. At some point prior to Mr. Sweeney's "confession", the police were contacted. When the police officer arrived at the scene, both the confession statement and the LSD were immediately given to him for use in the criminal prosecution. Mr. Sweeney was then advised of his *Miranda* rights by the officer, and declined to waive those rights. Mr. Sweeney was subsequently charged with possession and delivery.

At the CrR 3.5 and CrR 3.6 hearings, the trial court determined Mr. Sweeney's confession was admissible,

because questioning by Job Corps officials did not constitute government action, thereby making *Miranda* warnings unnecessary. The evidence found during the strip search was also held admissible under the rationale of *New Jersey v. T.L.O.*, 469 U.S. 325, 83 L. Ed. 2d 720, 105 S. Ct. 733 (1985) and *State v. Brooks*, 43 Wn. App. 560, 718 P.2d 837 (1986), which hold generally that probable cause is not required to search in a school environment.

At trial, Mr. Sweeney was found guilty of possession and delivery of LSD. He had no previous criminal history, but under the Sentencing Reform Act of 1981 (SRA), his current three offenses gave him an offender score of three. The presentence report cited the mitigating language found in RCW 9.94A.390(1)(g)[1] and recommended that Mr. Sweeney be given an exceptional, lesser sentence of 4 months. The trial court expressed its dissatisfaction with the SRA guidelines, but found there were no mitigating circumstances in this case and therefore sentenced Mr. Sweeney within the standard range.

■ The first issue to be addressed is whether the trial court erred in admitting the evidence found during the strip search of Mr. Sweeney. The general trend in this country has been to allow officials in a quasi–schoolhouse setting to conduct searches without the requisite showing of probable cause required of law enforcement officials. *See T.L.O.*, 469 U.S. at 341. In *United States v. Coles*, 302 F. Supp. 99 (D. Me. 1969), the court upheld the warrantless search of a corpsman's suitcase by a Job Corps official based on the Job Corps' need to discipline and maintain order. Similarly, searches of a student's dormitory room by a university's Dean of Men and a cadet's car by school officials at a quasi–military academy have also been upheld under the "need to discipline" theory. *Moore v. Student*

---

[1]RCW 9.94A.390(1)(g) provides:

"The operation of the multiple offense policy of RCW 9.94A.400 results in a presumptive sentence that is clearly excessive in light of the purpose of this chapter, as expressed in RCW 9.94A.010."

*Affairs Comm.,* 284 F. Supp. 725 (M.D. Ala. 1968); *Keene v. Rodgers,* 316 F. Supp. 217 (D. Me. 1970). Washington cases, holding the Fourth Amendment standards are equally applicable to Const. art. 1, § 7, have required at least a showing of "reasonable grounds to believe the search is necessary in the aid of maintaining school discipline and order." *State v. Brooks, supra* at 567 (quoting *State v. McKinnon,* 88 Wn.2d 75, 81, 558 P.2d 781 (1977)). Reasonable grounds to search have been found in cases when the information of wrongdoing came from reliable sources. In the present case, the information of alleged drug dealing came from the student leader of Mr. Sweeney's dormitory. The information given by the student informant gave no details of what type of drugs were sold or to whom, when the sales occurred, or where the drugs could be found. The information enhanced an earlier suspicion of Mr. LePoidevin, who had personally observed other students from the same and other dormitories entering and exiting Mr. Sweeney's apartment during unusual hours, *i.e.,* when such visitations did not usually occur. Under these circumstances, Mr. LePoidevin took Mr. Sweeney to the office of Mr. Valdez. Upon hearing Mr. LePoidevin's report, Mr. Valdez had reasonable grounds from reliable sources to believe a search was necessary to maintain Job Corps discipline and order.

The right to extend the search to Mr. Sweeney's person is not without limitations. In *United States v. Kroll,* 351 F. Supp. 148, 153 (W.D. Mo. 1972), *aff'd,* 481 F.2d 884 (8th Cir. 1973), the court noted the cases of *Coles, Moore,* and *Keene,* but continued:

> Our inquiry does not stop with the conclusion that the initiation of an inspection search of the [defendant] was reasonable. A search which is reasonable at its inception may yet violate the Fourth Amendment by virtue of its intolerable intensity and scope. . . .
> In order to resolve the scope issue in this case we must decide two questions: (1) whether the search of the [defendant] exceeded the scope of [a] search justified at the outset . . .;

and (2) if so, whether there were additional operative facts which justified the expansion of the search.

Likewise, in *New Jersey v. T.L.O.*, 469 U.S. at 341–42, the Court stated:

> Determining the reasonableness of any search involves a two-fold inquiry: first, one must consider "whether the . . . action was justified at its inception," . . . second, one must determine whether the search as actually conducted "was reasonably related in scope to the circumstances which justified the interference in the first place," . . . Such a search will be permissible in its scope when the measures adopted are reasonably related to the objectives of the search and not excessively intrusive in light of the age and sex of the student and the nature of the infraction.

(Footnotes omitted.) This language was cited with approval in *Brooks,* at 564.[2]

Applying the above standard here, the scope of the search of Mr. Sweeney's person—the contents and the inside of the pocket of his clothing—was justified at its outset. *State v. McKinnon, supra* at 81. The next inquiry is whether the expansion of the search of Mr. Sweeney's person to his body "'was reasonably related in scope to the circumstances which justified the interference in the first place'". *Brooks,* at 564 (quoting *T.L.O.,* at 341–43). Courts have approved searches which have been limited in scope to suitcases (*Coles*), dormitory rooms (*Moore*), automobiles (*Keene*), purses (*T.L.O.*), pockets (*McKinnon*), and lockers (*Brooks*). In the present case, Mr. LePoidevin admitted the search of Mr. Sweeney's locker presumably would have yielded nothing. The search of the items emptied from Mr. Sweeney's pockets also yielded nothing. The search of Mr. Sweeney's actual pocket revealed nothing but a "minute" piece of an unidentified leaf. Additionally, Mr. LePoidevin

---

[2] The language of *T.L.O.* and *Brooks* has recently been codified in RCW 28A-.67, Laws of 1989, ch. 271, §§ 244–47, pp. 1312–13. Section 246 prohibits public school officials from conducting a body search of a student. This statute does not affect the present case, however, as it pertains only to public school officials; moreover, it was not in effect at the time of this incident.

testified he did not believe a further search would disclose anything else:[3]

Q. But the question is, as I understand, there was even after the pocket search, you had no more specific information that would lead you to believe that you would find drugs by doing a strip search, specific information?

A. Yeah, I don't recall having any real indication that there would be something further.

Q. Was then the strip search conducted just because you had not yet found anything and that was a remaining possibility?

A. . . . [F]rom my involvement there, that would have been my general impression, yes.

Therefore, no "additional operative facts" existed here which justified the expansion of the initial search to a strip search of Mr. Sweeney. In addition, Mr. Valdez and Mr. LePoidevin violated the Job Corps' own Center Directive 400–9, which provides in part: "Body searches will only be conducted when there is *substantial* evidence to indicate that a person is in possession of unauthorized goods . . .". (Italics ours.)

▮ The strip search of Mr. Sweeney also violated Job Corps guidelines found in 20 C.F.R. § 684.94, entitled "Right to privacy", which reads in part: "(a) Each corps-member shall be entitled to privacy in keeping with the right to privacy and other Federal, State, and local laws . . .". *State v. Berber,* 48 Wn. App. 583, 740 P.2d 863, *review denied,* 109 Wn.2d 1014 (1987) indicated that the Fourth Amendment and Const. art. 1, § 7 guarantee that individuals will be safe from unreasonable invasions of their private affairs, and that search and seizure issues should be analyzed in terms of a person's reasonable expectation of privacy.[4] In *Berber,* at 588, we applied the 2–prong expectation of privacy test: First, has an individual by his or her

---

[3]The record does not disclose whether Mr. Valdez, who directed the strip search, testified at trial.

[4]In *State v. Vonhof,* 51 Wn. App. 33, 37, 751 P.2d 1221, *review denied,* 111 Wn.2d 1010 (1988), *cert. denied,* 488 U.S. 1008, 102 L. Ed. 2d 782, 109 S. Ct. 790 (1989), we noted: "Direct law enforcement involvement is not a prerequisite to application of the protections of either the Fourth Amendment or Const. art. 1, §

conduct exhibited a subjective expectation of privacy in a particular place or object? Second, is the individual's subjective expectation of privacy one that society is prepared to recognize? We noted that society recognized an expectation of privacy in one's body and that exposure of "private parts" was "highly offensive." *Berber,* at 589. We cannot conceive of anything more intrusive to a person's right to privacy than a strip search. Such an intrusion would require a showing of substantial "operative facts" to justify the expansion of a search to this degree. These "operative facts" are decidedly lacking here.[5]

Additionally, it appears the strip search of Mr. Sweeney may not have been conducted solely for the purpose of in-house discipline, but to gather evidence for state criminal action. As such, Job Corps officials also exceeded the guideline set out in 20 C.F.R. § 684.94(b)(3), which states: "Searches may be conducted for evidence to be used in criminal prosecution. These shall always be done by a law enforcement officer with a search warrant . . .". For a search of this nature to have been conducted by police, a search warrant based on probable cause would have been required. The State cannot circumvent this constitutional requirement by allowing Job Corps officials to conduct a warrantless search for evidence to be used in a state criminal action. The police should not be entitled to profit from Job Corps officials' actions by receiving on a "silver platter" evidence unconstitutionally obtained.[6]

The next issue is whether Mr. Sweeney's "confession" should have been admitted. Under Center Directive 400–9,

---

7. Those protections extend to the activities of school officials, *Kuehn v. Renton Sch. Dist. 403,* 103 Wn.2d 594, 694 P.2d 1078 (1985) . . .".

[5]Although arguably Mr. Sweeney consented to the strip search, such consent was not voluntary, based on Mr. Sweeney's testimony he did not believe he had the right to refuse. *See State v. Hashman,* 46 Wn. App. 211, 214, 729 P.2d 651 (1986), *review denied,* 108 Wn.2d 1021 (1987).

[6]*See,* by analogy, *United States v. Janis,* 428 U.S. 433, 49 L. Ed. 2d 1046, 96 S. Ct. 3021 (1976).

the further questioning of Mr. Sweeney for more than an hour became one "for evidence of crime for use in criminal proceedings." The primary purpose for the questioning after discovery of the LSD was clearly for use in a state criminal action. Under the Center Directive, this was the appropriate time to have a law enforcement official conduct further proceedings. Job Corps regulations promulgated in 20 C.F.R. § 684.94(b)(4) also provide:

> No search shall be wider than that necessary to accomplish the specific purpose of the search. However, if unauthorized goods are found as a result of a search, these may be confiscated. If evidence that may be used in a criminal prosecution is discovered, the corpsmember involved is to be advised of his or her right to remain silent and to an attorney pursuant to § 684.91(c).

There is no issue that Mr. Sweeney was not advised of his rights until after he had made and signed a confession he had delivered LSD to two other students.

The actions of Mr. Valdez and Mr. LePoidevin, in obtaining his confession, thus violated the Job Corps' own regulations. In *United States v. Appoloney,* 761 F.2d 520, 522 (9th Cir.), *cert. denied,* 474 U.S. 949 (1985), the court recognized that evidence must be suppressed when noncompliance with an administrative regulation also constitutes a statutory or constitutional violation. Here, the violation of the Job Corps regulations also infringed on Mr. Sweeney's constitutional Fifth Amendment rights, thereby requiring the suppression of his confession.

It is also clear the verbal and written confessions were not voluntary. In *State v. Gonzales,* 46 Wn. App. 388, 401, 731 P.2d 1101 (1986), we noted that even an apparent voluntary confession may be rendered involuntary by "[a]ny direct or implied promise, however slight . . .". Based on Mr. LePoidevin's testimony that it was implied to Mr. Sweeney that things would "go easier", or it would be to his advantage, if he dealt with Job Corps personnel rather than the police, we find, when coupled with the length of the time period of the questioning, the type of questioning, and its purpose, that Mr. Sweeney's confession

was improperly obtained. It should have been suppressed. Moreover, because the LSD tablet was seized as a result of a search which exceeded its permissible scope, the ensuing "confession" was tainted as the "fruit of a poisonous tree". *Wong Sun v. United States,* 371 U.S. 471, 9 L. Ed. 2d 441, 83 S. Ct. 407 (1963). In *State v. Gonzales, supra* at 401, we stated:

> When confronted with the fruits of an illegal seizure, it is readily apparent that a suspect confessed due to "exploitation of that illegality", whether or not the confession is "voluntary" for Fifth Amendment purposes.

Because we find that both the LSD and the confession should have been suppressed and the case dismissed, we do not need to address the issue of whether the trial court failed to exercise discretion in sentencing.[7]

The judgment of the Superior Court is reversed and the cause of action dismissed.

THOMPSON, C.J., and MUNSON, J., concur.

---

[7]Whether this search and subsequent confession could be used to support the termination of Mr. Sweeney from the Job Corps is not before us.