[No. 24460-4-I.   Division One.   April 29, 1991.]

THE STATE OF WASHINGTON, *Respondent*, v. JAMES BENNETT, *Appellant*.

*Deborah Whipple* of *Washington Appellate Defender Association,* for appellant.

*Norm Maleng, Prosecuting Attorney,* and *Brenda Bannon, Deputy,* for respondent.

KENNEDY, J. — This case concerns the arrest and conviction of a juvenile for knowingly riding in a stolen vehicle in violation of RCW 9A.56.070. Appellant claims that he was prejudiced by a delayed entry of findings of fact and conclusions of law, and that he was seized in violation of the fourth amendment to the United States Constitution and article 1, section 7 of the Washington State Constitution. We affirm.

## I
### FACTS AND PROCEDURAL HISTORY

In the early morning hours of January 8, 1989, King County Police Officer Montalvo saw a gray car parked in an otherwise empty parking lot across the street from a 7-Eleven store near Southwest 136th and First Avenue South in King County. The car was parked in such a way as to be not observable or only partially observable from the 7-Eleven or from the adjacent streets. There were no cars parked in the 7-Eleven parking lot at that time.

Appellant and four others got out of the car and began approaching the 7-Eleven. According to Officer Montalvo, some of the five appeared to be adults and some appeared to be juveniles. There was only one clerk on duty in the store, and Officer Montalvo had knowledge of previous incidents at this store at this time of day. Officer Montalvo noted that the five were "mingling" at a phone booth near the street entrance for a while. They then proceeded toward the door of the store. As Officer Montalvo drove his police car into the 7-Eleven parking lot, these five persons stopped at the door of the store. When Officer Montalvo asked them what they were doing, they replied "nothing".

He then asked them their names and for corroborating identification. Several of them gave false names at first. Only one produced identification at that time, and none of the names given by the parties showed up at the Department of Licensing pursuant to a computer check conducted by Officer Montalvo. Appellant first told Officer Montalvo that his name was Pernell Jones, but later admitted that his name was James Bennett. The other parties also eventually gave their real names and some had identification. According to Officer Montalvo, during this questioning, he indicated to the parties that they were not free to leave. The questioning lasted approximately 5 to 7 minutes. After the questioning, Officer Montalvo indicated that they could leave, and appellant and the others headed back toward the car in the lot across the street, rather than into the 7-Eleven.

At about this time, another officer, Officer Woo, arrived. Officer Woo recognized some of the persons, including appellant Bennett, from a previous meeting. Officer Woo later testified that, at his earlier meeting with them, Bennett and the driver of the car in the parking lot had told him that they did not drive and usually took the bus. There is no direct testimony indicating when Officer Woo realized that one of the parties he recognized was the driver of the car, but when Officer Montalvo told him that the group was in a car, he indicated to Officer Montalvo that he did not think they had cars and that they should investigate.

The officers then drove their cars across the street to check the license plate of the car in the parking lot. Officer Montalvo parked behind the car, while Officer Woo parked behind Montalvo. Officer Montalvo testified that he did not use his flashing red lights, but that he and Officer Woo parked in such a manner that the car would have been unable to leave the parking lot. Officer Montalvo then ran a check on the plates and determined that the car had been stolen. At the same time, Officer Woo approached the driver of the car to ask questions and

noticed that the car was running without any keys. Officer Montalvo testified that the duration of the stop until determining the car was stolen took less than a minute.

After determining that the car was stolen, Officer Montalvo turned on his lights and asked the occupants to get out of the car. He read them their *Miranda*[1] rights shortly thereafter. Bennett was then immediately taken to the police station where he made a statement that he had ridden in the car knowing that it was stolen.

Bennett was charged by information with violation of RCW 9A.56.070. A fact-finding hearing was held on May 11, 1989. At the hearing, Bennett moved to suppress all of the evidence arising out of his arrest and detention, including his statement of knowledge to the police. The motion was denied and Bennett was found guilty as charged. Bennett was sentenced to 22 days of confinement with 1 day suspended and was to begin serving his sentence on June 16, 1989.

Bennett filed his notice of appeal on July 10, 1989. When the prosecutor's office did not supply findings of fact and conclusions of law within the time period required by JuCR 7.11(d), appellant filed a motion with this court requesting an order compelling presentation of findings on or before January 5, 1990. This motion was granted by clerk's ruling on December 22, 1989. The findings of fact and conclusions of law were not entered until February 21, 1990. One of the findings, finding of fact XA, was written in by hand and stated that the car was not prevented from leaving when Officers Montalvo and Woo pulled near it.

## II
### SUPPRESSION OF EVIDENCE

Appellant contends that his confession was the result of a seizure without probable cause in violation of the fourth

---

[1] *Miranda v. Arizona*, 384 U.S. 436, 16 L. Ed. 2d 694, 86 S. Ct. 1602, 10 A.L.R.3d 974 (1966).

amendment to the United States Constitution and article 1, section 7 of the Washington State Constitution, and that such seizure requires reversal of his conviction.

The fourth amendment to the United States Constitution and article 1, section 7 of the Washington State Constitution prohibit unreasonable searches and seizures. If a search or seizure is unreasonable, any evidence derived from that search or seizure is suppressed as " 'fruit of the poisonous tree'." *Wong Sun v. United States*, 371 U.S. 471, 488, 9 L. Ed. 2d 441, 83 S. Ct. 407 (1963); *State v. Larson*, 93 Wn.2d 638, 645-46, 611 P.2d 771 (1980). In the present case, this court must determine upon independent review whether the appellant was "seized" within the meaning of the aforementioned provisions, and if so, whether the seizure was reasonable under the circumstances. *See, e.g.,* *State v. Stroud*, 30 Wn. App. 392, 394, 634 P.2d 316 (1981), *review denied*, 96 Wn.2d 1025 (1982).

■ A person is seized within the meaning of the Fourth Amendment "when, by means of physical force or a show of authority, his freedom of movement is restrained." *Stroud*, 30 Wn. App. at 394-95 (citing *United States v. Mendenhall*, 446 U.S. 544, 64 L. Ed. 2d 497, 100 S. Ct. 1870 (1980)). "There is a 'seizure' when, in view of all of the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave." *Stroud*, 30 Wn. App. at 395. The same rule applies to automobiles and their occupants. *Stroud*, 30 Wn. App. at 395.

■ ■ In general, a warrantless search is not reasonable, except in certain situations in which "the societal costs of obtaining a warrant . . . outweigh the reasons for prior recourse to a neutral magistrate." *State v. Williams*, 102 Wn.2d 733, 736, 689 P.2d 1065 (1984). The United States Supreme Court and this State's highest court have recognized that a brief stop of a suspicious party for questioning is reasonable within the meaning of the Fourth Amendment and Const. art. 1, § 7, if the suspicion is justified and if the stop is related "in scope" to the circum-

stances justifying the stop. *Williams*, at 738-39; *see Terry v. Ohio*, 392 U.S. 1, 20 L. Ed. 2d 889, 88 S. Ct. 1868 (1968). In order to be of the proper scope, the stop must last "no longer than is necessary to effectuate the purpose of the stop", and "the investigative methods employed must be the least intrusive means reasonably available to verify or dispel the officer's suspicion in a short period of time." *Williams*, 102 Wn.2d at 738 (citing *Florida v. Royer*, 460 U.S. 491, 500, 75 L. Ed. 2d 229, 103 S. Ct. 1319 (1983)). The factors to be considered are thus "the purpose of the stop, the amount of physical intrusion upon the suspect's liberty, and the length of time the suspect is detained." *Williams*, 102 Wn.2d at 740.

■ When determining whether a justification for a stop exists, the circumstances must be considered in their totality and the officer must be able to articulate reasons for the stop. *State v. Kennedy*, 38 Wn. App. 41, 46, 684 P.2d 1326 (1984) (citing *United States v. Cortez*, 449 U.S. 411, 66 L. Ed. 2d 621, 101 S. Ct. 690 (1981)), *aff'd*, 107 Wn.2d 1, 726 P.2d 445 (1986). "Special experience" or expertise of an officer may be taken into account. *Kennedy*, 38 Wn. App. at 46 (citing *Brown v. Texas*, 443 U.S. 47, 61 L. Ed. 2d 357, 99 S. Ct. 2637 (1979); *State v. Cottrell*, 86 Wn.2d 130, 132, 542 P.2d 771 (1975)).

A. Stop in Front of the 7-Eleven Store.

In the present case, the State admits that there was a seizure when the appellant was stopped for questioning at the door of the 7-Eleven. The State argues however, that the stop was justified and of the proper scope.

The State's proffered justification for the suspicion leading to the stop was the parking of the car across the street from the empty 7-Eleven parking lot and in such a way as to go unnoticed, the presence of juveniles in the early morning hours, and the fact that the suspects stopped at the door of the 7-Eleven when the police officer approached rather than entering the store. The police officer also testified about his knowledge of problems at the 7-Eleven store and of problems arising from juveniles

being out late at night. We conclude that the suspicion was reasonable. Given the reasonable suspicion, the limited nature of the stop for brief questioning was permissible in scope. The officer displayed no sign of direct force and simply asked the suspects for their names and what they were doing. He detained them only long enough to ascertain their correct names and to check for any outstanding warrants. This stop did not violate appellant's constitutional rights.

B. Stop in the Parking Lot.

■ There is disagreement between the parties as to whether the parking of the police cars behind the car in which appellant was riding constituted a seizure or a stop. The handwritten finding of fact XA indicates that Officers Montalvo and Woo parked in such a way that the car's freedom of movement was not restricted. However, this finding is not supported by substantial evidence in the record as a whole.

The record reveals that Officer Montalvo testified that the car was probably not physically free to leave. A map drawn by Officer Montalvo, entered as an exhibit below, also indicates that the car was not free to leave the parking lot. There are no other facts in the record addressing this question. Substantial evidence does not exist to support finding XA, and the evidence indicates instead that the car was seized within the meaning of the Fourth Amendment and Const. art. 1, § 7. Even so, the evidence in the record before this court establishes that the seizure was reasonable.

At the time that Officer Montalvo first parked behind the car, blocking its way, he had been given false names only minutes before, and had been informed by Officer Woo that some of the party had recently told him that they had no car and did not drive. These facts taken together would give justifiable suspicion for a brief *Terry* stop. Furthermore, the scope of the stop was very limited. Officer Montalvo pulled behind the car without his lights flashing and ran a check on the license plate while Officer

Woo went to question the driver of the car. Officer Montalvo determined that the car was stolen within 1 minute, giving him sufficient justification to proceed with an arrest. The appellant's *Miranda* rights were properly given. Appellant's confession was not tainted by the investigative stops. Therefore, appellant's confession was legally obtained and properly before the court during trial.

## III
### DELAYED ENTRY OF FINDINGS OF FACT AND CONCLUSIONS OF LAW

Appellant also contends that the trial court's decision should be reversed due to the delayed entry of the findings of fact and conclusions of law by the prosecution in this case. Appellant claims that this delayed entry prejudices his ability to clear his name as soon as possible and also prejudices the integrity of the judicial process.

JuCR 7.11(d) provides in pertinent part that "[t]he prosecution must submit . . . findings [of fact] and conclusions [of law] within 21 days after receiving . . . notice of appeal." The prosecution did not submit findings until February 21, 1990, over 152 days after the filing of the appeal and 47 days beyond the deadline established by this court following the appellant's request for an order to compel the submission of the findings. Appellant claims that this delay requires dismissal of the appellant's conviction.

JuCR 7.11 requires that there be a meaningful set of findings of fact and conclusions of law to permit appellate review of a juvenile case. *State v. Fellers*, 37 Wn. App. 613, 616, 683 P.2d 209 (1984). In *Fellers*, this court had only the notation "reasons set forth in the record" as the sum total of findings and conclusions for review. This court found this to be an inadequate factual basis for review. *Fellers*, at 616. Appellant contends that the delayed entry of findings of fact and conclusions of law in the present case also prevent a meaningful basis for review.

■ Unlike the situation in *Fellers*, however, this court did have the findings of fact and conclusions of law prior to appellate review, and the findings are adequate for review.[2] Although the practice of entering late findings and conclusions with no apparent reason is unacceptable, this court has previously held that there must be a showing of prejudice for a reversal of a case based upon *tardiness* of the entry of findings of fact and conclusions of law. *State v. Royster*, 43 Wn. App. 613, 621, 719 P.2d 149 (1986) (citing *State v. McGary*, 37 Wn. App. 856, 861, 683 P.2d 1125, *review denied*, 102 Wn.2d 1024 (1984)).

In *McGary*, the State supplemented its record with the required findings of fact and conclusions of law after the appellant had already filed his brief in the appeal. *McGary*, at 861. Although the court strongly disapproved of the practice, it did not reverse because no prejudice was shown. *McGary*, at 861. Similarly in the present case, the State's delay in submitting the findings and conclusions does not appear to have prejudiced the appellant.

Appellant would have already served his 21-day sentence even if the findings of fact and conclusions of law had been entered in the required time period. Appellant's claim that there was prejudice because of the delay in "justice" or clearing appellant's name is not sufficient. This court has previously held that the concept of prejudice in the speedy trial context is concerned with a prisoner's liberty. *State v. Royster*, 43 Wn. App. at 617-18. Such reasoning is relevant in the present context. Since appellant's liberty interest was not altered by the delayed entry, no prejudice resulted.

■ Although no prejudice resulted against the appellant's liberty interest, the prosecutor's delay in filing the findings and conclusions has certainly caused addi-

---

[2]Similarly this case is distinct from *State v. Witherspoon*, 60 Wn. App. 569, 805 P.2d 248 (1991), where a juvenile conviction was reversed when *no* findings and conclusions were entered before or during the appellate procedure. *See Witherspoon*, at 571 ("[w]e are not confronted here with a mere late entry of findings . . .").

tional work on the part of appellant's counsel, and on the part of personnel of this court. The fact that the findings came after the appellant had already filed his opening brief and contained an added handwritten finding which was not supported by substantial evidence required the appellant to address that issue for the first time in his reply brief. This left the State with no opportunity to respond, either to the merits of the new assignment of error or to the implication of unfair conduct. The orderly process of appellate review was accordingly circumvented.

We refer this matter to this court's commissioners with instructions that the King County Prosecutor be directed to show cause why sanctions should not be imposed for failure to timely comply with JuCR 7.11(d) and for failure to timely comply with the clerk's ruling which was entered in these proceedings on December 22, 1989.

The decision below is affirmed.

COLEMAN and PEKELIS, JJ., concur.

Reconsideration denied October 16, 1991.

Review denied at 118 Wn.2d 1017 (1992).