[No. 28206-9-I.   Division One.   April 6, 1992.]

THE STATE OF WASHINGTON, *Respondent*, v. KIMBERLEE ANNE LITTS, *Appellant*.

*Rita Griffith* of *Washington Appellate Defender Association,* for appellant.

*Norm Maleng, Prosecuting Attorney,* and *Margaret Nave, Deputy,* for respondent.

WEBSTER, A.C.J. — Kimberlee Litts (Kim) was convicted of fourth degree assault in juvenile court. She asserts that her conviction should be vacated because the revised findings and conclusions were not filed until after she submitted her opening brief, and the trial court's oral ruling contains no finding that the assault was intentionally committed.

## FACTS

The complaining witness, Katherine Hill (Kathy), testified as follows: She went to the Ballard Boys and Girls Club at around 4 p.m. on May 1, 1990. About 45 to 50 minutes later, she saw Kim leaving the game room with Jenny Ackaret. Kathy overheard Kim telling Jenny that she had hit someone. Kathy approached the girls and asked if the hit "hurt him". Kim said, "No". Kathy started to walk away,

but stopped for some reason. Kim walked toward her and said, "This won't hurt". Kim then made a fist, placed it on Kathy's chest, and "punched" her. Kathy said "Ow" and stepped backward, in part because of the force of the hit. The punch hurt, but Kathy did not cry. Kathy did not recall Kim saying any angry or threatening words to her. Later, Kathy's mother came to pick her up. After Kathy told her mother what happened, her mother took her to the police station and then to the hospital. Kathy missed 2 days of school. Her chest was sore for 2 weeks, and she had problems breathing for 1 week.

Kim testified that she had asked Andy, a counselor at the club, if she could "do something to him". Kim showed him what she wanted to do and Andy agreed. Kim put her fist against his chest with her elbow slightly bent and then straightened out her arm with her fist still on his chest. Both Andy and Kim stepped backward. Kim asked Andy if it hurt and he said "No". Kim had engaged in this activity before with others and believed that she was "just playing a game". After Kathy asked Kim if it hurt Andy, Kim asked Kathy if she could do the same thing to her. Kathy said "Yeah", and so Kim "did it". During the push, Kim went forward more than she usually did because Kathy was smaller.

Scott Erickson and Jenny Ackaret witnessed the incident. Scott described Kim's action as something done among the kids as a game, more like a push than a hit. Jenny agreed that Kim gave Kathy a push and not really a hit. Jenny also confirmed Kim's testimony that Kathy agreed Kim could play the game with her.

Litts was charged in King County Superior Court with the crime of assault in the fourth degree, RCW 9A.36.041. When the incident occurred, she was 14 years old and Kathy was 10 years old. Following a bench trial, she was convicted as charged.

Litts filed a notice of appeal on April 9, 1991. On July 10, 1991, Litts moved for an order compelling the State to present findings of fact and conclusions of law to the trial

court and to provide her with a copy when entered. The clerk of the Court of Appeals granted the motion, ordering the State to file findings and conclusions by July 26, 1991. The clerk further ordered that if the findings and conclusions were not filed by July 26, 1991, the State must appear before a commissioner on August 9, 1991, to show cause why sanctions should not be imposed.

On August 8, the State moved to modify the clerk's ruling. The State asserted that it sent findings and conclusions approved by both parties to the trial court on July 25, that the trial court informed the State on August 2 that it could not sign the proposed findings as worded, and that the State mailed revised findings and conclusions to the trial court on August 7.[1] On August 14, Litts filed a brief objecting to the State's motion to modify on grounds that she had filed her opening brief on August 1, that the State had the verbatim report of proceedings for more than 21 days before the July 26 deadline, and that the State did not seek a continuance before the deadline.

Following the August 9 hearing to show cause why sanctions should not be imposed, a Court of Appeals commissioner granted the State additional time to enter findings and conclusions, and ruled that sanctions would be imposed on the prosecutor if the findings and conclusions were not filed or a motion for a continuance brought before August 23. The defense counsel was unaware that the motion for a continuance would be considered at the August 9 hearing, and did not attend. The prosecutor complied with the modified ruling by filing revised findings and conclusions with the Court of Appeals on August 21.

After the State filed its brief, Litts moved to strike the brief and the documents appended to it. The appendices included: the findings and conclusions originally submitted to the trial court; the trial court's letter to the prosecutor explaining why the findings and conclusions could not be

---

[1]The State also asserted that the juvenile prosecutor's office did not receive the clerk's ruling until July 19, and that the prosecutor assigned to the appeal did not receive the verbatim report of proceedings until July 2.

signed; the revised findings of fact and conclusions of law; and an affidavit from the prosecutor's office indicating that the prosecutor did not look at the appellant's brief before submitting revised findings and conclusions to the trial court. A commissioner of this court ruled that the motion to strike was integrally related to the issues raised in the appeal and referred it to the panel designated to hear the case on its merits.

DISCUSSION

JuCR 7.11 states:

(c) **Decision on the Record.** The juvenile shall be found guilty or not guilty. The court shall state its findings of fact and enter its decision on the record. The findings shall include the evidence relied upon by the court in reaching its decision.

(d) **Written Findings and Conclusions on Appeal.** The court shall enter written findings and conclusions in a case that is appealed. The findings shall state the ultimate facts as to each element of the crime and the evidence upon which the court relied in reaching its decision. The findings and conclusions may be entered after the notice of appeal is filed. The prosecution must submit such findings and conclusions within 21 days after receiving the juvenile's notice of appeal.

Subsections (c) and (d) impose two requirements: First, the court in a juvenile adjudicatory hearing must enter "formal findings of fact and conclusions of law as to each element of the offense charged." *State v. Souza,* 60 Wn. App. 534, 537, 805 P.2d 237, *review denied,* 116 Wn.2d 1026 (1991); *State v. Fellers,* 37 Wn. App. 613, 616, 683 P.2d 209 (1984) (appellate court must be able to discern from the record the facts upon which the trial court relied in reaching its conclusion as to each element of the crime). The findings must state "the evidence upon which the court relied" and "the ultimate facts as to each element of the crime". JuCR 7.11(c), (d); *accord, State v. Jones,* 34 Wn. App. 848, 850-51, 664 P.2d 12 (1983). Second, in a case that is appealed, the prosecutor is responsible for submitting written findings of fact and conclusions of law within 21 days after receiving the juvenile's notice of appeal. JuCR 7.11(d); *State v. Bennett,* 62 Wn. App. 702, 710, 814 P.2d 1171 (1991). *Written* findings and conclusions are necessary in order to insure "efficient

and accurate" appellate review. *State v. Commodore*, 38 Wn. App. 244, 249-50, 684 P.2d 1364, *review denied*, 103 Wn.2d 1005 (1984).

The defense counsel contends that the oral decision is inadequate to support the conviction because it contains no finding on the essential element of intent. Defense counsel further contends that the court should not consider the revised findings and conclusions, since they were not part of the trial court record when defense counsel prepared Litts's opening brief, giving the State an opportunity to tailor the revised written findings and conclusions to the assignments of error raised in the appellant's opening brief.

We agree that the trial court failed to enter a finding or conclusion on the element of intent in its oral decision and that the oral decision therefore is inadequate to support the conviction. *State v. Jones, supra.* Nevertheless, if the written findings and conclusions are properly before the court and contain the missing element, and the record supports the missing element, the conviction may be affirmed.

■ Washington courts have held that although the practice of entering late findings is unacceptable, a conviction will not be reversed based on the late entry of findings of fact and conclusions of law absent a showing of prejudice to the defendant. *State v. Bennett, supra*; *State v. Royster*, 43 Wn. App. 613, 621, 719 P.2d 149 (1986) (citing *State v. McGary*, 37 Wn. App. 856, 861, 683 P.2d 1125, *review denied*, 102 Wn.2d 1024 (1984)); *cf. State v. Charlie*, 62 Wn. App. 729, 815 P.2d 819 (1991) (although the court stated that no prejudice had been established, the defendant appears to have been prejudiced by the delay in the submission of findings and conclusions). Courts have held that the defendant is prejudiced only if the defendant's liberty interest would be adversely affected by the late entry of findings and conclusions. *Bennett*, at 711.

Washington courts have also held that sanctions may be imposed on a prosecutor who fails to comply with an order to file written findings and conclusions, or who "circumvents" the appellate process by failing to file written findings and

conclusions prior to filing of the appellant's opening brief. *Bennett*, at 712.

■ We now hold that if the State fails to file written findings and conclusions until after the appellant has submitted his or her opening brief, and the record reflects that the findings and conclusions were tailored to address the assignments of error raised in the appellant's brief, prejudice may be found.

Here, the revised findings and conclusions were filed after the appellant filed her opening brief. However, we are not persuaded that the State in any way tailored its revised findings and conclusions to the assignments of error raised by the appellant. The original written findings of fact and conclusions of law that were submitted to the trial court on July 25 contained a finding that Litts intended to commit an assault. Moreover, the trial court's reason for not signing the first set of proposed findings was its objection to the statement that the action was "a little more than a gentle touch". In a letter to the prosecutor, the trial court indicated it believed the act was a "decidedly heavy movement" and that it could not sign the proposed findings in their present form. In response to the letter, the State submitted revised findings and conclusions, which stated in part:

> A push may have been technically approved; but not a hit to the extreme that Kathy received. It was more than a gentle touch; it was a decidedly heavy movement by the respondent that did do damage to Kathy, and was in excess of what she may have consented to. The respondent intended the excessive contact to Kathy causing pain and medical attention.

There is no evidence that the State tailored its revised findings and conclusions to the assignments of error raised by the appellant. We thus conclude that the appellant was not prejudiced by the late entry of the revised findings and conclusions. Accordingly, we deny the appellant's motion to strike the respondent's brief and appendices.[2]

---

[2] We also reject the appellant's argument that the appendices constituted "new evidence". With the exception of the affidavit, which the State conceded was not properly before the court, the appendices were part of the appellate court file, and the Court of Appeals was obligated to consider them.

Since the revised findings and conclusions contain a specific finding on the element of intent, which is supported by the record, the findings and conclusions are adequate to uphold the conviction.

The judgment is affirmed.

COLEMAN and BAKER, JJ., concur.