[No. 27335-3-I. Division One. July 27, 1992.]

THE STATE OF WASHINGTON, *Respondent,* v. MZEE BARAKA HARRIS, *Appellant.*

*Dawn Monroe* of *Washington Appellate Defender Association,* for appellant.

*Norm Maleng, Prosecuting Attorney,* and *James Burke, Deputy,* for respondent.

THOMPSON, J. — Mzee Harris appeals the order of disposition of the juvenile court finding him guilty of possession with intent to deliver cocaine. He contends: (1) the conviction must be reversed and the case dismissed because the prosecutor did not submit findings of fact and conclusions of law within 21 days of receiving Mr. Harris' notice of appeal, as required by JuCR 7.11(d); and (2) the court erred when it denied his motion to suppress evidence of cocaine found during a strip search. We affirm.

Mr. Harris based his motion to suppress on RCW 10.31.030 and 10.79.130. He argued the search was improper because the police did not give him an opportunity to post bail. RCW 10.31.030 provides:

> The officer making an arrest must inform the defendant that he acts under authority of a warrant, and must also show the warrant: *Provided,* That if the officer does not have the warrant in his possession at the time of arrest he shall declare that the warrant does presently exist and will be shown to the defendant as soon as possible on arrival at the place of intended confinement: *Provided, further,* That any officer making an arrest under this section shall, if the person arrested wishes to deposit bail, take such person directly and without delay before a judge or before an officer authorized to take the recognizance . . ..

He also asserted the police did not have a reasonable and individualized suspicion that he was carrying narcotics so as to justify the strip search. Under RCW 10.79.130,

> (1) No person . . . may be strip searched without a warrant unless:
> (a) There is a reasonable suspicion to believe that a strip search is necessary to discover weapons, criminal evidence, contraband, or other thing concealed on the body of the person to be searched, that constitutes a threat to the security of a holding, detention, or local correctional facility;

At the suppression hearing, Officer Ronald Martin of the Seattle Police Department testified that when he went on duty the afternoon of February 26, 1990, he reviewed a memo circulated by the department's gang unit which listed outstanding warrants for known gang members. Mzee Harris had four traffic warrants. About 7 p.m., Officer Martin saw Mr. Harris on the southwest corner of 23rd and East Union, detained him while he verified the warrants, then placed him under arrest and transported him to the East Precinct. Officer Martin stated he told Mr. Harris he was under arrest for over $1,500 in warrants, and Mr. Harris did not indicate he wanted to post bail.

Officer Martin explained that all juveniles are first screened at the precinct house to determine whether probable cause exists for their arrest. In addition, the Youth Services Center requires two copies of the police report before it

accepts a child; the reports are prepared at the precinct. The arrestee is routinely placed in a holding cell at the precinct while screening and reports are done, which sometimes takes 1½ to 2 hours. As a matter of policy, the arrestee is searched before he goes into the cell to ensure that he is not taking drugs or contraband in with him.

Officer Martin's partner, Jay Moyer, searched Mr. Harris at the precinct house before putting him in the holding cell. Officer Moyer stated that in his experience gang members often tape razor blades to their skin. He also testified he always pats down the arrestee's buttocks and groin because gang members commonly hide drugs in this area.

While patting down Mr. Harris, Officer Moyer noticed that he was holding his buttocks tightly together. Officer Moyer had had prior dealings with Mr. Harris and believed he was involved with narcotics. His suspicions had also been aroused by the fact Mr. Harris had asked to be taken directly to the Youth Services Center and, when this request was not honored, asked to use the bathroom immediately upon arrival at the precinct. Based upon these facts, Officer Moyer obtained permission from a supervisor to strip search Mr. Harris.

The strip search involved having Mr. Harris lower his underwear. Officer Moyer then observed a cellophane baggie protruding from Mr. Harris' buttocks. The baggie contained 30 rocks of cocaine, which sells for about $20 per rock. Officer Moyer found $40 hidden in Mr. Harris' left shoe.

Mr. Harris admitted the officers advised him of the warrants, but not their amounts, when they arrested him. He testified that when he reached the precinct he asked permission to phone his mother so she could bail him out. The officers said they would call her. He denied asking to go to the Youth Services Center, seeking permission to use the bathroom, or squeezing his buttocks together during the search. In rebuttal, Officer Martin testified he did not recall Mr. Harris asking to call his mother to post bail. Officer Martin did not contact Mr. Harris' mother until after the search.

In denying Mr. Harris' motion to suppress, the court stated that RCW 10.31.030 was not violated, reasoning the police did not need to take Mr. Harris to the warrant office because Mr. Harris never asked to post bail. The court further found the circumstances supported a "reasonable suspicion" Mr. Harris was concealing contraband so as to justify a strip search under RCW 10.79.130. He was subsequently found guilty of possessing cocaine with intent to deliver.

First, Mr. Harris contends his conviction must be reversed and the charge dismissed because the prosecutor failed to comply with JuCR 7.11(d).

JuCR 7.11(d) provides:

> The court shall enter written findings and conclusions in a case that is appealed. . . . The findings and conclusions may be entered after the notice of appeal is filed. The prosecution must submit such findings and conclusions *within 21 days after receiving the juvenile's notice of appeal.*

(Italics ours.) The State did not submit findings until after Mr. Harris noted their absence in his appellate brief, almost a year after Mr. Harris filed his notice of appeal.

Several recent cases address the consequence of not complying with JuCR 7.11(d). In *State v. Witherspoon*, 60 Wn. App. 569, 805 P.2d 248·(1991), the court reversed a juvenile's conviction for conspiracy to commit first degree robbery and ordered dismissal of the charge. There, the trial court still had not entered findings, although more than a year had passed since the juvenile had filed the appeal. The court held at page 572 that the juvenile would be prejudiced by a remand for the entry of findings. It reasoned that permitting the State to submit findings after the juvenile had framed the issues in his brief has the appearance of unfairness. More importantly, the court believed that because the juvenile remained in custody, the delay caused by a remand would preclude meaningful relief, even if the juvenile's conviction were reversed.

*State v. Bennett*, 62 Wn. App. 702, 814 P.2d 1171 (1991), *review denied*, 118 Wn.2d 1017 (1992) held the juvenile suffered no real prejudice, although findings were not filed until 5 months after the notice of appeal was filed. *Bennett*

noted at page 711 that the juvenile's liberty interest was not affected by the delay, because he would have served his full term of confinement whether or not the findings had been timely. *See also State v. Charlie*, 62 Wn. App. 729, 815 P.2d 819 (1991); *State v. Pena*, 65 Wn. App. 711, 829 P.2d 256 (1992); *State v. Litts*, 64 Wn. App. 831, 837, 827 P.2d 304 (1992).

■ Here, the written findings have been entered, although late. They track the court's oral findings on the issues material to our resolution of this appeal. Accordingly, there is no appearance of unfairness in accepting them after Mr. Harris set forth his assignments of error in his opening brief. The late entry has not delayed the appeal and, thus, has not prejudiced Mr. Harris' liberty interest. In these circumstances, the prosecutor's failure to comply with JuCR 7.11(d) does not mandate dismissal.

Second, Mr. Harris asserts the police violated RCW 10.31-.030 by not providing him an opportunity to post bail prior to the search.

RCW 10.31.030 states: "[A]ny officer making an arrest . . . shall, if the person arrested wishes to deposit bail, take such person directly and without delay . . . before an officer . . . authorized to take the recognizance . . .". In *State v. Smith*, 56 Wn. App. 145, 783 P.2d 95 (1989), *review denied*, 114 Wn.2d 1019 (1990), the court held evidence of drugs was improperly seized from the defendant during a search of her purse while she was being booked on a petty offense. There, defendant was not told prior to the search that bail noted on the warrant was $25. The court held that the arresting officer had not complied with RCW 10.31.030, and suppressed the evidence. *Smith*, at 150. *See also* 2 W. LaFave, *Search and Seizure* § 5.3(d), at 510-14 (2d ed. 1987).

Mr. Harris' situation is distinguishable from *Smith*. The trial court found the police told Mr. Harris the amount of the warrants prior to the search, and he never indicated any desire to post bail. The testimony of Officer Martin is sufficient to support this finding. However, Mr. Harris maintains he asked to call his mother, and under RCW 10.31.030, the

police were under a duty to accommodate him in a reasonable attempt to raise bail.

In *Zehrung v. State*, 569 P.2d 189 (Alaska 1977), the defendant, like Mr. Harris, did not have the bail amount on his person. His employer arrived at the station a short time after the arrest and offered to post bail. He was kept waiting while the defendant was searched. *Zehrung*, at 195. The court suppressed the evidence seized, reasoning at page 195: "The ability to obtain this prompt release should not depend on the fortuitous circumstance of one having sufficient money on his person to post the bail at the time he arrives at the jail." But the court subsequently modified its opinion to recognize that exigencies may at times justify a search. *Zehrung v. State*, 573 P.2d 858, 859 (Alaska 1978).

■ We need not determine whether RCW 10.31.030 required the police to give Mr. Harris an opportunity to raise bail. Assuming the police had afforded Mr. Harris access to a telephone, and his mother or another relative or a friend had agreed to come to the station with the needed bail money, Mr. Harris would have been placed in the holding cell to await their arrival.[1] Exigent circumstances justified searching Mr. Harris before placing him in the holding cell. The police had prior experience with gang members taping razor blades to their skin. If Mr. Harris had concealed a razor blade in this fashion, he could have retrieved it while in the cell and had it ready to use when an officer returned for him. We find no reversible error.

Third, Mr. Harris argues the statutory requirements for a strip search were not met. He asserts (1) the police did not have a reasonable suspicion he was concealing drugs, RCW 10.79.130, and (2) Officer Moyer did not obtain *written*

---

[1] In his brief, Mr. Harris argues that Officer Martin "did not specify why it was necessary to place Mzee in the holding cell rather than keeping him in handcuffs and seated in the screening area". There are many reasons why it may be impractical to hold arrestees in the police screening area, including lack of personnel to supervise them. Absent some proof the police placed Mr. Harris in the cell as a pretext to search him, we will not consider this argument.

approval of the supervisor to conduct the search, RCW 10.79-.140(2).[2]

■ RCW 10.79.130(1)(b) requires "probable cause" to support a strip search for criminal evidence "not constituting a threat to facility security". The subsection applicable here, RCW 10.79.130(1)(a), requires that police have a "reasonable suspicion" to support a strip search for items that constitute a threat to security. It is clear from the statutory framework "reasonable suspicion" is a lesser standard and involves something other than probable cause.

"Reasonable suspicion" is not defined in the statute, but the term has an established meaning. Specifically, our courts have required that investigatory stops be supported by an articulable suspicion of criminal activity. *See Terry v. Ohio*, 392 U.S. 1, 20 L. Ed. 2d 889, 88 S. Ct. 1868 (1968). In *State v. Kennedy*, 107 Wn.2d 1, 6, 726 P.2d 445 (1986), the court described that standard "as the ability to reasonably surmise from the information at hand that a crime was in progress or had occurred" (citing *United States v. Cortez*, 449 U.S. 411, 66 L. Ed. 2d 621, 101 S. Ct. 690, *cert. denied*, 455 U.S. 923 (1981)). *Kennedy*, at 6, continued:

> Hence, the degree of probability required for the police conclusion is less in a stop situation than in an arrest. 3 W. LaFave [*Search and Seizure* § 9.2] at 65 [(1978)]. LaFave suggests that the standard is a substantial possibility that criminal conduct has occurred or is about to occur. We believe this to be the preferred definition. . . . When the activity is consistent with criminal activity, although also consistent with noncriminal activity, it may justify a brief detention.

The circumstances reported by Officer Moyer suggested a "substantial possibility" that Mr. Harris was concealing drugs in a fashion that only a strip search would reveal.[3]

---

[2]RCW 10.79.140(2) states: "[N]o strip search may be conducted without the specific prior written approval of the jail unit supervisor on duty."

[3]*State v. Colin*, 61 Wn. App. 111, 809 P.2d 228, *review denied*, 117 Wn.2d 1009 (1991) and *State v. Sweeney*, 56 Wn. App. 42, 782 P.2d 562 (1989), cited by Mr. Harris, both involved strip searches, but did not take place in a detention facility. Thus, the State's interest in jail security was not at stake, and RCW 10.79.130 *et seq.* were not applicable. *Colin* and *Sweeney* are therefore distinguishable.

We therefore hold a "reasonable suspicion" supported the search.

■■ The record is ambiguous with regard to Mr. Harris' claim that Officer Moyer failed to obtain prior *written* approval from his supervisor to conduct the strip search. Officer Moyer testified he obtained approval; he was not asked if the approval was in writing. In any event, suppression of evidence is not an appropriate remedy for violation of the writing requirement of RCW 10.79.140(2). The purpose of the statutory requirement is to provide proof the officer consulted his or her supervisor and obtained permission to conduct the search. The lack of *written* approval does not invalidate other proof, in the form of oral testimony, that such permission was obtained.

Affirmed.

COLEMAN and FORREST, JJ., concur.