[No. 9271-2-III. Division Three. December 7, 1989.]

THE STATE OF WASHINGTON, *Respondent,* v. GLORIA SMITH, *Appellant.*

146

*William McCool* and *McCool & Butaud,* for appellant (appointed counsel for appeal).

*James L. Nagle, Prosecuting Attorney,* for respondent.

THOMPSON, C.J.—Gloria Smith appeals from a judgment and sentence for possession of a controlled substance. The issue is whether the Superior Court erred when it denied her motion to suppress evidence of cocaine seized from her purse during a booking search. Ms. Smith contends the police violated RCW 10.31.030 by not first showing her the warrant for her arrest and giving her an opportunity to post bail. That statute provides:

> The officer making an arrest must inform the defendant that he acts under authority of a warrant, and must also show the warrant: *Provided,* That if the officer does not have the warrant in his possession at the time of the arrest he shall declare that the warrant does presently exist and will be shown to the defendant *as soon as possible on arrival at the place of intended confinement; Provided, further,* That any officer making an arrest under this section shall, if the person arrested wishes to deposit bail, take such person *directly and without delay* before a judge or before an officer authorized to take the recognizance and justify and approve the bail, including the deposit of a sum of money equal to bail. Bail shall be the amount fixed by the warrant.

(Italics ours.) We reverse.

The material facts of Ms. Smith's arrest and subsequent detention are not in dispute. On April 11, 1987, off–duty police officers Steve Echevarria and Mike Stroe were working as security guards at the Whitman Lounge in Walla

Walla. Officer Stroe recognized one of the patrons, Gloria Smith. He telephoned dispatch to see if there was an outstanding warrant for her arrest. Dispatch informed him that it had a 1985 bench warrant for Ms. Smith for failure to comply with a court order on a no valid operator's license charge. The bail amount noted on the warrant was $25.

Dispatch contacted on–duty officer Joseph Cyr, who went to the Whitman Lounge and arrested Ms. Smith at approximately 11 p.m. He testified that he informed Ms. Smith at the time of the arrest that a warrant existed and that he would show it to her as soon as they arrived at the jail. During the ride in the patrol car to the jail, Officer Cyr kept Ms. Smith's purse in the front seat of the vehicle, next to him. Once there, jail deputy Katherine Treadwell met them in the entry room, dumped Ms. Smith's purse, and began to search the contents. She testified that Officer Cyr was reading the warrant to Ms. Smith as she searched the purse. Deputy Treadwell found a vial containing a white powder in Ms. Smith's purse. The substance was tested and proved to be cocaine.

Neither Officer Cyr nor Deputy Treadwell recalls Ms. Smith asking to post bail. On the other hand, Ms. Smith testified that she asked to post bail as soon as Officer Cyr read the warrant to her. Family and friends who arrived later were told they could not obtain Ms. Smith's release on bail. By this time, however, the police had discovered the cocaine in her purse.

Ms. Smith contends the purpose of RCW 10.31.030 is to provide a defendant with notice of the charge and the amount of bail as soon as possible after arrest so that the defendant may avoid incarceration by posting bail. Subjecting the defendant to an inventory search before providing the opportunity to post bail subverts this purpose.

While several Washington cases have construed RCW 10.31.030, none have addressed the precise issue here. Most of the reported cases have dealt with the question of whether the arrest itself was unlawful because the arresting

officer failed to advise the defendant that a warrant existed and would be shown to him as soon as possible. These cases have found substantial compliance with the statute based on the fact that the officer advised the defendant of the charge on which the arrest was made, or they have found that compliance with the statute was excused by the defendant's own conduct in violently resisting arrest.

For example, in *State v. Dugger,* 34 Wn. App. 315, 319, 661 P.2d 979 (1983), the court held:

> The Legislature's concerns for imposing the two conditions appear to be that an arrestee be advised of the authority and reason for his arrest at the earliest time following his arrest. Here, Dugger was told that he was being arrested on the authority of a warrant for his arrest, and he seems to have been aware of the reason behind the issuance of that warrant. We find that the arresting officers sufficiently complied with the statute to have accomplished its purposes.

*See also State v. Ekkelkamp,* 42 Wn. App. 375, 711 P.2d 1076 (1985); *State v. Goree,* 36 Wn. App. 205, 673 P.2d 194 (1983), *review denied,* 101 Wn.2d 1003 (1984); *State v. Simmons,* 35 Wn. App. 421, 667 P.2d 133, *review denied,* 100 Wn.2d 1025 (1983).

Several cases from other jurisdictions have held the fruits of a jail inventory search must be suppressed when it appears that the defendant would not have been booked and incarcerated but for the failure of the police to afford the defendant an opportunity for release. *See* 2 W. LaFave, *Search and Seizure* § 5.3(d), at 510–14 (1987). In *United States v. Mills,* 472 F.2d 1231 (D.C. Cir. 1972), the defendant was subjected to a booking inventory search after being arrested for driving without a license. He had not been advised of his right to post $50 collateral and leave the station. The court held:

> A huge proportion of the public is guilty of some sort of petty infraction almost every day—jaywalking, exceeding the 25–mph limit, using high beams, parking in a loading zone, among many others. Informing a person arrested for such a minor offense of his option to post collateral, *and giving him an opportunity to exercise that option,* is a necessary precondition to a thorough and complete search that is conducted only as an incident to the needs of stationhouse detention.

. . . .
When a person is charged with a collateral–type petty offense, under which he rightfully has the opportunity to post collateral and avoid further detention, and there is no probable cause to believe that he committed a more serious crime, the police may not engage in an inventory search of the offender . . . and seek to support it on the ground of holding him in further confinement, unless at a minimum he was *timely* notified of his opportunity to post collateral (and thus avoid further detention) and refused or was unable to do so.

(Italics ours.) *Mills,* at 1239–40.

Several state courts have used the *Mills* approach, usually in fact situations in which the inventory search would have been unnecessary had the authorities complied with provisions of state law concerning bail. In *People v. Dixon,* 392 Mich. 691, 222 N.W.2d 749 (1974), the court noted that the bail statute did not specifically direct the arresting officer to inform the person arrested of the right to post bail. However, the court was persuaded

that the sense of the statute and its purpose of avoiding unnecessary incarceration of minor offenders can only be served by imposing on the arresting officer . . . the duty to inform the person about to be jailed of the statutory protection of which he otherwise would probably be ignorant.

*Dixon,* at 703.[1]

Further, the court in *Zehrung v. State,* 569 P.2d 189, 195 (Alaska 1977) stated:

The ability to obtain this prompt release should not depend on the fortuitous circumstance of one having sufficient money on his person to post the bail at the time he arrives at the jail. Many people do not carry much cash on their person. These persons should be permitted access to a telephone in order to get in touch with a relative, an employer, a friend, or an attorney, who could come to the stationhouse within a reasonable time and put up the necessary bail.[2]

---

[1]In *People v. Chapman,* 425 Mich. 245, 387 N.W.2d 835, 845 (1986), the Michigan court refused to extend *Dixon* to searches incident to arrest, as opposed to inventory searches.

[2]On rehearing, *Zehrung* was modified to the extent that the court recognized that exigencies may demand a different course of action. *Zehrung v. State,* 573 P.2d 858, 859 (Alaska 1978).

*See also State v. Hurtado,* 219 N.J. Super. 12, 529 A.2d 1000, 1005 (1987), *rev'd on other grounds,* 113 N.J. 1, 549 A.2d 428 (1988); *People v. Overlee,* 174 Colo. 202, 483 P.2d 222 (1971); *People v. Mercurio,* 10 Cal. App. 3d 426, 88 Cal. Rptr. 750 (1970).

■ Here, Ms. Smith was not advised in a timely fashion of the opportunity to post bail. It is undisputed that Deputy Treadwell dumped Ms. Smith's purse *while* Officer Cyr was reading her the warrant. While a dispute exists as to whether Ms. Smith requested bail once she learned of its amount, such a request is not material in these circumstances. Specifically, the search had proceeded and the cocaine was found by the time Ms. Smith had an opportunity to request bail. At that point, she was not able to avoid incarceration. As in *Zehrung,* we have to presume that Ms. Smith would have been able to post the $25 bail, had she been given the timely opportunity to do so. In fact, three members of her family and a friend came to the jail for the purpose of bailing her out. They failed only because the cocaine had already been seized.

Since RCW 10.31.030 was not complied with, the inventory search was unlawful. *See South Dakota v. Opperman,* 428 U.S. 364, 49 L. Ed. 2d 1000, 96 S. Ct. 3092, 3100 (1976), in which the court held that an inventory search conducted in accordance with standard police procedures was reasonable. *See also Illinois v. Lafayette,* 462 U.S. 640, 77 L. Ed. 2d 65, 103 S. Ct. 2605, 2611 n.3 (1983), in which the court reaffirmed the necessity for established booking procedures. *Lafayette* observed that an appropriate inquiry on remand would be whether the defendant was to have been incarcerated after being booked for disturbing the peace.

Nevertheless, the State justifies the booking search on the ground that the police could have searched Ms. Smith's purse at the time of the arrest. *State v. Stroud,* 106 Wn.2d 144, 151–52, 720 P.2d 436 (1986). But *Stroud* specifically premised its holding on the *timing* of the search. It stated at page 152:

During the arrest process, including the time *immediately subsequent* to the suspect's being arrested, handcuffed, and placed in a patrol car, officers should be allowed to search the passenger compartment of a vehicle for weapons or destructible evidence.

(Italics ours.) In *State v. Boyce,* 52 Wn. App. 274, 279, 758 P.2d 1017 (1988), the court suppressed evidence seized from the defendant's vehicle *after* he had been taken to the stationhouse. "[O]nce [the defendant] was removed from the scene, there simply were no special circumstances present that justified a warrantless vehicle search as there was no possibility that [the defendant] could destroy evidence or grab a weapon." *Boyce,* at 279. *See also United States v. Vasey,* 834 F.2d 782, 786–87 (9th Cir. 1987).[3]

*State v. Carner,* 28 Wn. App. 439, 624 P.2d 204 (1981) provides guidance here. In *Carner,* a juvenile was arrested after attempting to elude the police in his automobile. The arresting officer took him to the station, where the decision was made to release him to his mother. While one officer called the mother, another officer proceeded to search the juvenile's person, finding cocaine. Holding the trial court properly suppressed the evidence, the court reasoned:

> The crucial finding is that before [the officer] conducted the challenged search, the officers had determined that the defendant would not be detained, but released to his mother. At this stage, he had already been frisked at the scene and asked to empty his pockets. There was no danger of weapons, or that he might possess evidence relevant to the crime for which he was arrested. The further danger that the defendant might possess items which would aid in his escape or carry contraband or drugs to his jailmates would exist only if the police intended to detain him. Once the administrative decision was made to release him without further detention, these dangers ceased to exist and gave the police no reasonable basis for a detailed body search.

*Carner,* at 445.

---

[3] In *State v. Fladebo,* 113 Wn.2d 388, 396–97, 779 P.2d 707 (1989), the Supreme Court cited both *Boyce* and *Vasey,* but distinguished them on the ground that the search there was conducted while the defendant still was at the scene.

Here, the police apparently were not concerned that Ms. Smith was carrying weapons. Otherwise, they would have frisked her at the scene of her arrest. They did separate her from her purse, but they could have continued to hold her purse without inventorying it, while waiting a reasonable time for Ms. Smith's friend or relatives to post bail. If the purse contained cash for bail, the police could have observed her while she retrieved the money from the purse. If Ms. Smith was released on bail, there, of course, was no risk of her carrying contraband into the jail. As in *Boyce* and *Carner,* the dangers justifying either a search incident to an arrest or a jail inventory search did not exist at the time the search here actually was carried out.

We therefore hold the trial court erred in not suppressing evidence discovered as a result of the booking search. In light of this holding, we need not address the second issue raised by Ms. Smith.

Reversed.

GREEN and SHIELDS, JJ., concur.

Review denied at 114 Wn.2d 1019 (1990).