[No. 44935-4-I. Division One. July 2, 2001.]

THE STATE OF WASHINGTON, *Respondent*, v. RALPH ANDREW ROSS, *Appellant*.

*David B. Koch* (of *Nielsen, Broman & Associates, P.L.L.C.*), for appellant.

*James H. Krider, Prosecuting Attorney*, and *Seth Aaron Fine* and *David F. Thiele, Deputies*, for respondent.

Cox, J. — At issue is whether the trial court should have suppressed evidence of cocaine discovered during a search of Ralph Ross following his arrest on a misdemeanor warrant. Because there was no violation of RCW 10.31.030, the statutory authority under which Ross was in custody, we affirm.

Everett police officer Aaron Defolo saw a male, later identified as Ross, and a female leaving a known drug house. Officer Defolo asked them for their names and dates of birth. They provided the information and proceeded on their way. He then ran their names through his computer, and learned that each had misdemeanor warrants from different jurisdictions out for their arrest.

Officer Defolo approached them again, advised them of the warrants, and placed them under arrest. He searched Ross incident to arrest, but did not reach inside the small coin pocket in Ross' pants because the officer had once discovered a razor blade in such a pocket.

The warrant for Ross' arrest was from the City of Lynnwood. In accordance with the Everett Police Department's ordinary procedure in such cases, Officer Defolo contacted dispatch and arranged to meet a Lynnwood police officer, who would take custody of Ross and transport him to

the Lynnwood jail. Officer Defolo met Lynnwood police officer Wes Burns at an agreed location near the border between the City of Everett and the City of Lynnwood. Officer Defolo transferred Ross into Officer Burns' custody at the rendezvous point. At the time of transfer, Officer Defolo urged the officer to "check" Ross again before placing him in the patrol car. In compliance with his department's standard procedures, Officer Burns searched Ross before putting him into the patrol car. Inside the coin pocket of Ross' pants, Officer Burns discovered a piece of cellophane plastic containing a substance that the state crime lab later determined to be cocaine. Roughly 30 to 45 minutes elapsed between the arrest and the transfer and second search. The record does not reflect any of the activities of the two officers and the suspect between the arrest and the second search other than those described above.

Because Officer Burns had probable cause to arrest Ross for a felony after discovery of the suspected cocaine, he drove Ross to the Lynnwood Police Department. There, he interviewed him regarding the drug offense. He did not book Ross on the misdemeanor warrant. The Lynnwood Jail does not handle felons. Therefore, Officer Burns then took Ross to the Snohomish County Jail, and booked him there on possession of cocaine.

The State charged Ross with possession of a controlled substance, cocaine, in violation of RCW 69.50.401(d). Ross moved to suppress evidence of the cocaine as the fruit of an unlawful search. The trial court denied the motion, and a jury convicted Ross on the possession charge.

Ross appeals.

## Directly and Without Delay

Ross argues that the trial court erred by denying his motion to suppress evidence of the cocaine because Officer Defolo violated RCW 10.31.030 by failing to take him "directly and without delay" before a judge or officer authorized to receive bail. We reject this argument.

 We review the denial of a motion to suppress by determining whether substantial evidence exists to support the trial court's findings of fact, and whether those findings support the trial court's conclusions of law.[1] Unchallenged findings are verities for purposes of appeal.[2] Ross does not assign error to any of the trial court's findings of fact. We will therefore determine whether those findings support the court's conclusions of law.[3] We review the conclusions of law de novo.[4]

RCW 10.31.030 provides, in pertinent part, that:

> The officer making an arrest must inform the defendant that he acts under authority of a warrant, and must also show the warrant: PROVIDED, That if the officer does not have the warrant in his possession at the time of arrest he shall declare that the warrant does presently exist and will be shown to the defendant as soon as possible on arrival at the place of intended confinement: PROVIDED, FURTHER, That any officer making an arrest under this section shall, if the person arrested wishes to deposit bail, *take such person directly and without delay* . . . before an officer authorized to take the recognizance and justify and approve the bail . . . .[5]

Ross argues that the statute implicitly requires suppression of any evidence that is gathered in violation of the statute. We note that the statute is silent on the question of searches associated with arrests done under its authority. We also note that Ross does not challenge on constitutional grounds either search by the two police officers.

Ross' sole argument is that Officer Defolo violated this statute by failing to take him "directly and without delay" to a place where he could post bail. This argument is based on the phrase contained in the second proviso of the statute.

---

[1] *State v. Dempsey*, 88 Wn. App. 918, 921, 947 P.2d 265 (1997); *State v. Hill*, 123 Wn.2d 641, 647, 870 P.2d 313 (1994).

[2] *Hill*, 123 Wn.2d at 644.

[3] *Dempsey*, 88 Wn. App. at 921.

[4] *State v. Johnson*, 128 Wn.2d 431, 443, 909 P.2d 293 (1996).

[5] (Emphasis added.)

He argues that Officer Defolo should have driven him directly to the Snohomish County Jail so that he could post bail, rather than arranging for a transfer to Officer Burns for transport to the Lynnwood police station. What Ross characterizes as the "unwarranted" delay occasioned by the transfer is at the heart of his argument. And this argument is unsupported by the words of the statute.

■■ When reading a statute, this Court will not construe language that is clear and unambiguous, but will instead give effect to the plain language without regard to rules of statutory construction.[6] This Court will "avoid a literal reading of a statute if it would result in unlikely, absurd, or strained consequences."[7]

■■ Officer Defolo's actions in arranging to transfer custody of Ross were consistent with the purpose of RCW 10.31.030, which is to "provide a defendant with notice of the charge and the amount of bail as soon as possible after arrest so that the defendant may avoid incarceration by posting bail."[8] The statute does not require that the arresting officer take the suspect to the nearest place of detention. Accordingly, the statute did not obligate Officer Defolo to take Ross to the Snohomish County Jail. Instead, it simply required that he take Ross "directly and without delay" to a place where he could post bail. Officer Defolo complied with that statutory mandate. The Everett officer promptly arranged for Ross' transportation to the neighboring City of Lynnwood, the place of issuance for the outstanding warrant, for processing. We note that the transfer of custody between the two officers and second search occurred about 30 to 45 minutes after Ross' arrest. This record shows nothing untoward occurred between the time of arrest, the initial search, the time in transit from the point of arrest to the rendezvous point, and the second search. And Ross does

---

[6] *Allan v. Dep't of Labor & Indus.*, 66 Wn. App. 415, 418, 832 P.2d 489 (1992).

[7] *State v. Elgin*, 118 Wn.2d 551, 555, 825 P.2d 314 (1992). *See also Amalgamated Transit Union Local 587 v. State*, 142 Wn.2d 183, 225, 11 P.3d 762 (2000).

[8] *State v. Smith*, 56 Wn. App. 145, 147, 783 P.2d 95 (1989), *review denied*, 114 Wn.2d 1019 (1990).

not argue otherwise. There is simply nothing in this record to suggest that the actions of the officers, individually or collectively, were inconsistent with the plain wording and spirit of the statute.

Ross argues that the search that revealed evidence of a serious criminal offense would not have occurred had Officer Defolo complied with the mandatory language of RCW 10.31.030 and taken him "directly and without delay" to the Snohomish County Jail and given him the opportunity to post bail. It may be true that the second search in this case would not have occurred under Ross' alternative. But it is also irrelevant because the officers complied with the statute.

Ross relies primarily on *State v. Caldera*[9] and *State v. Smith*,[10] in which this Court held that RCW 10.31.030 requires suppressing the fruit of a jail inventory search if police fail to first provide the arrested person with the opportunity to post bail. Both cases are distinguishable.

In *Smith*, police arrested Smith on a warrant and performed an inventory search of her purse while reading her the warrant at the jailhouse.[11] This Court concluded that the search was unlawful because police failed to comply with RCW 10.31.030 by not giving her a timely opportunity to post bail, and held that the trial court should have suppressed evidence discovered as a result of the booking search.[12] Similarly, in the consolidated case of *Caldera*, police arrested both defendants on outstanding warrants and took them to jail.[13] Before giving them an opportunity to post bail, officers searched the defendants in the jail's sally port and discovered evidence of cocaine.[14] This Court reaffirmed its holding in *Smith*, and held that the searches

---

[9] 84 Wn. App. 527, 528, 929 P.2d 482, *review denied*, 131 Wn.2d 1022 (1997).

[10] 56 Wn. App. at 150-51.

[11] *Smith*, 56 Wn. App. at 147.

[12] *Smith*, 56 Wn. App. at 151-52.

[13] *Caldera*, 84 Wn. App. at 529.

[14] *Caldera*, 84 Wn. App. at 529.

were unlawful because officers violated RCW 10.31.030 by searching the defendants prior to offering them the opportunity to post bail.[15]

■ But this Court has expressly limited application of the rule in *Smith* and *Caldera* to inventory searches performed at the jail at the time of booking.[16] Those cases, and the mandates of RCW 10.31.030, do not apply to searches that occur in the field incident to arrest.[17] In *State v. Jordan*, officers arrested Jordan two times based on outstanding warrants.[18] They searched him at the scene of each arrest, and seized methamphetamine on both occasions.[19] The trial court suppressed the evidence, concluding "that the searches violated RCW 10.31.030 because the officers did not read the warrant to Jordan or provide him an opportunity to post bail before the search."[20] This Court reversed, recognizing that, under *Smith*, the applicability of RCW 10.31.030 depends upon the "timing" of the search.[21] The Court concluded that *Smith* and *Caldera*

> do not apply to search as incident to arrest, but to inventory searches prior to booking the defendants into jail. To read RCW 10.31.030 to treat defendants arrested upon warrants differently at the time of arrest would lead to absurd results. RCW 10.31.030 does not permit the officer to take bail at the scene of arrest or even to have the warrant available at the time of arrest.[22]

Here, because Officer Burns searched Ross prior to their arrival at the Lynnwood police station, *Smith* and *Caldera* do not apply. Officer Defolo did not violate RCW 10.31.030

---

[15] *Caldera*, 84 Wn. App. at 528.

[16] *State v. Jordan*, 92 Wn. App. 25, 28, 960 P.2d 949 (1998), *review denied*, 137 Wn.2d 1006 (1999).

[17] *Jordan*, 92 Wn. App. at 28.

[18] *Jordan*, 92 Wn. App. at 26.

[19] *Jordan*, 92 Wn. App. at 26.

[20] *Jordan*, 92 Wn. App. at 27.

[21] *Jordan*, 92 Wn. App. at 28 (citing *Smith*, 56 Wn. App. 145).

[22] *Jordan*, 92 Wn. App. at 28 (citation omitted).

by arranging for Officer Burns to take Ross to the Lynnwood police station.

Having so held, we need not address the State's cross-appeal and other arguments.

We affirm the judgment and sentence.

ELLINGTON and APPELWICK, JJ., concur.

Review denied at 145 Wn.2d 1016 (2002).