[Nos. 28384-1-II; 28419-7-II. Division Two. March 23, 2004.]

THE STATE OF WASHINGTON, *Respondent*, v. JAMES ALLEN JACOBS, *Appellant*.

THE STATE OF WASHINGTON, *Respondent*, v. KATHY ANN AUSTIN-BOCANEGRA, *Appellant*.

670

*Patricia A. Pethick* and *Thomas E. Doyle*, for appellants.

*Edward G. Holm, Prosecuting Attorney*, and *Steven C. Sherman, Deputy*, for respondent.

HOUGHTON, J. — In this consolidated appeal, James Jacobs and Kathy Austin-Bocanegra argue that their jury convictions of unlawfully manufacturing a controlled substance should be reversed based on insufficient evidence. They also argue evidentiary and sentencing errors, ineffective assistance of counsel, and judicial and prosecutorial misconduct. We affirm.

## FACTS

In the early hours of March 21, 2001, Jennifer Hand spoke to Deputy Westby at the Thurston County Sheriff's Office. Hand managed an Olympia mobile home park and had received numerous complaints from tenants that a chemical odor emanated from space 7. Jacobs and Austin-Bocanegra lived in space 7 with their three-month-old child. Hand also told Westby that she had personally smelled the chemical odor and that a mutual friend told her that Jacobs and Austin-Bocanegra were "cooking meth." Austin-Bocanegra Clerk's Papers (CP) at 26.

On the morning of March 22, two sheriff's deputies investigated Hand's complaint. Lieutenant Brad Watkins, a detective, and Deputy Steve Hamilton, a uniformed officer, went to the mobile home park. Both deputies knew that Austin-Bocanegra had an outstanding Thurston County misdemeanor arrest warrant.

As they approached the house, the deputies detected chemical odors that they "associated with the production of Methamphetamine." CP at 18. When Jacobs answered the door, he told the deputies that he lived in the mobile home. The deputies advised him that they were investigating a tip that his home was a suspected methamphetamine lab. Jacobs denied manufacturing methamphetamine.

The deputies also told Jacobs that they sought Austin-Bocanegra because she had an outstanding misdemeanor warrant. Jacobs told the deputies that Austin-Bocanegra was not home, but that their child was asleep inside.

The deputies thought Jacobs appeared to be under the influence of methamphetamine. On his own, Jacobs admitted that he used methamphetamine, including the night before. He also admitted to having liquid chemicals outside his house, some of which he deposited in a nearby dumpster. According to the deputies, the odor from the dumpster was similar to the odor wafting from the home. Jacobs told the deputies that "someone" left the chemicals

at his house but that he did not know what the chemicals were. CP at 21.

Based on their conversation, Hamilton decided to detain Jacobs. The deputy could clearly see a weapon-sized suspicious bulge in Jacobs' front pants pocket although Jacobs denied having anything in his pockets. The bulge appeared to be consistent with the cylinder of a revolver or a bullet magazine.

In lieu of a safety search, the deputies asked Jacobs to turn out his front pants pockets. When Jacobs took a knife out of his pocket, a clear film canister fell to the ground, rolling near the deputy's foot. Hamilton picked up the canister and noticed white powder; it later field tested positive for methamphetamine. Hamilton then advised Jacobs of his *Miranda*[1] rights and placed him under arrest for unlawfully possessing a controlled substance.

Hamilton and Watkins continued to believe that Austin-Bocanegra and her infant were in the mobile home, even though Jacobs denied it. After asking the Thurston County Narcotics Task Force (TNT) to respond and secure the scene, Watkins called into the home for Austin-Bocanegra to come out. She appeared at the door of the mobile home holding the baby.

Hamilton told Austin-Bocanegra that she was under arrest on her outstanding warrant and advised her of her *Miranda* rights. Austin-Bocanegra said that she understood her rights and then she waived them.

The deputies also thought Austin-Bocanegra appeared to be under the influence of methamphetamine. In response to Hamilton's questioning, she told him she last used methamphetamine four days before. But she denied living in the mobile home or knowing anything about a methamphetamine manufacturing lab.

At 12:35 P.M. the same day, Ben Elkins, a TNT detective, applied for a search warrant. In his affidavit, he averred that he was "looking for . . . a possible methamphetamine

---

[1] *Miranda v. Arizona*, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966).

lab located within" Austin-Bocanegra and Jacobs' mobile home. CP at 25. And because of his "training and experience from going to other . . . labs" and his education in clandestine laboratory operations, he felt confident that the mobile home harbored a methamphetamine manufacturing lab. CP at 29. Elkins based his probable cause affidavit on his personal investigation of the site, his conversation with Jacobs, and the information Watkins, Hamilton, and Hand provided.

Based on the affidavit, a magistrate determined that there was probable cause to issue a search warrant. During the later search, some of the items seized included red stained coffee filters, a plastic gram scale with white residue, Red Devil lye, over-the-counter cold pills and tablets, and an air purifying respirator.

The State charged Jacobs and Austin-Bocanegra as co-defendants with unlawful manufacture of a controlled substance in violation of RCW 69.50.401(a)(1)(ii), .435(a)(3), and RCW 9.94A.605 (formerly RCW 9.94A.128 (2001) (count I), and criminal mistreatment in the second degree in violation of RCW 9A.42.030 (count II).

After trial, the jury found Jacobs and Austin-Bocanegra guilty of count I, but not of count II. The jury also returned special verdicts, finding Jacobs and Austin-Bocanegra guilty of (1) manufacturing methamphetamine where a person under the age of eighteen is on the premises and (2) manufacturing a controlled substance within 1,000 feet of a school bus stop.

## ANALYSIS

### Motion to Suppress

Jacobs and Austin-Bocanegra first contend that the trial court erred in denying their motions to suppress. They assert that Elkins' affidavit did not provide sufficient probable cause to issue the mobile home search warrant and,

therefore, the trial court should have suppressed all evidence seized during the search.

Specifically, Jacobs and Austin-Bocanegra assert that the affidavit did not set forth a sufficient factual basis to rely on the informant's information that they were manufacturing methamphetamine. And they argue that the affidavit failed to identify Lieutenant Watkins' and Deputy Hamilton's education and experience in identifying unlawful controlled substance odors.

■ ■ We review a motion to suppress by determining whether substantial evidence exists to support the trial court's findings and then whether those findings in turn support the trial court's conclusions of law. *State v. Ross*, 106 Wn. App. 876, 880, 26 P.3d 298 (2001), *review denied*, 145 Wn.2d 1016 (2002). We consider unchallenged findings as verities on appeal. *Ross*, 106 Wn. App. at 880.

■ And we review a search warrant affidavit for abuse of discretion. *State v. Seagull*, 95 Wn.2d 898, 907, 632 P.2d 44 (1981). A trial court abuses its discretion when it renders a decision on untenable grounds or for untenable reasons. *State v. Brown*, 132 Wn.2d 529, 572, 940 P.2d 546 (1997), *cert. denied*, 523 U.S. 1007 (1998). We give great deference to the issuing magistrate. *State v. Cole*, 128 Wn.2d 262, 286, 906 P.2d 925 (1995). In doing so, we evaluate the affidavit from a commonsense and reasonable person approach. We require the magistrate to draw inferences from factual information, not from broad generalizations. *State v. Thein*, 138 Wn.2d 133, 148-49, 977 P.2d 582 (1999); *Cole*, 128 Wn.2d at 286.

■ ■ A magistrate properly issues a search warrant when probable cause exists from sufficient facts and circumstances reasonably establishing that either criminal activity is taking place or illegal substances are present at a certain location. *Cole*, 128 Wn.2d at 286. When facts standing alone do not support probable cause, it is still possible that they do so when viewed as a whole with other facts. *Cole*, 128 Wn.2d at 286.

■ In reviewing an affidavit of probable cause that relies on an informant's tip, we use the *Aguilar-Spinelli* two-prong analysis. *Spinelli v. United States*, 393 U.S. 410, 89 S. Ct. 584, 21 L. Ed. 2d 637 (1969); *Aguilar v. Texas*, 378 U.S. 108, 84 S. Ct. 1509, 12 L. Ed. 2d 723 (1964); *Cole*, 128 Wn.2d at 287. The affidavit must sufficiently identify the basis for the informant's information and establish the informant's credibility. *Cole*, 128 Wn.2d at 287. If one prong of the analysis is not satisfied, an independent police investigation corroborating the informant's information may suffice to support the missing *Aguilar-Spinelli* prong and establish probable cause. *State v. Vickers*, 148 Wn.2d 91, 112, 59 P.3d 58 (2002); *Cole*, 128 Wn.2d at 287.

Here, the affidavit explains that Hand not only smelled chemical odors coming from space 7, but also she received tenant complaints about the noxious odors. And a mutual friend told her that Jacobs and Austin-Bocanegra were manufacturing methamphetamine with their young son present.

The State concedes that Hand's information alone fails to establish either prong of *Aguilar-Spinelli*. But Watkins and Hamilton investigated Hand's complaint and reported their findings to Elkins, corroborating Hand's information. Both deputies independently described a strong "iodine smell of chemical odor" emanating from the mobile home, the odor increasing with the door open and decreasing with the door closed. And Jacobs admitted to living in the mobile home and having a pressure cooker and acetone inside the house. He also told Hamilton that he had discarded some liquid chemicals in a nearby dumpster, with fumes similar to those emanating from the house. And when Jacobs turned out his pants pockets, a clear film canister with white powder fell out. The substance later field tested positive for methamphetamine. Here, the independent police investigation corroborates Hand's disclosures and satisfies *Aguilar-Spinelli*.

Jacobs and Austin-Bocanegra assert that the affidavit insufficiently described the deputies' skill in odor detection.

█ When an officer bases a probable cause affidavit only on detection of a controlled substance odor, a search warrant is justified if that officer's experience and training in detecting such odors is in the search warrant affidavit. *United States v. Kuntz*, 504 F. Supp. 706, 710 (S.D.N.Y. 1980); *State v. Olson*, 73 Wn. App. 348, 356, 869 P.2d 110, *review denied*, 124 Wn.2d 1029 (1994). But if the odor detecting officer's experience and education is not in the affidavit, and the magistrate is given other facts that demonstrate probable cause, the affidavit's lack of the officer's experience and education is not fatal to the search warrant's validity. *Kuntz*, 504 F. Supp. at 710; *Olson*, 73 Wn. App. at 356.

Here, Watkins and Hamilton detected chemical odors more than 20 feet away from the house. They detected the same chemical odor at a nearby dumpster. The deputies told Elkins about their independent investigation corroborating Hand's information about the noxious odors. Elkins, in turn, reported this evidence to the issuing magistrate. Moreover, Elkins' affidavit extensively covered his experience with unlawful drug detection:

Judge: Have you been able to identify the smell?

Elkins: No ... I haven't got close enough to the mobile um, speaking with Lieutenant Watkins and Deputy Hamilton, they described it as like a, a iodine smell of chemical odor . . . .

Judge: Do you recognize that description?

Elkins: Yes, I do ... I didn't get close enough to ah, to smell that.

Judge: Well, what do you think it is?

Elkins: Um, based on what they're telling me, the lieutenant, the deputy, and also Mr. Jacobs, it's a strong possibility that there may be a, the components of a red phosphorous-type methamphetamine lab located inside the ah, mobile home and this is based on the fact that the, the deputy and lieutenant described the chemical odor possibly being iodine and that's, that's associated upon from my training and experience

from going to other, other labs ... that when you have iodine that's used for making ... methamphetamine.

Judge: All right, why don't you tell me about your training experience in the area?

CP at 28-29.

In its CrR 3.6 findings of fact and conclusions of law, the trial court determined that Hamilton and Watkins had extensive experience working with methamphetamine production labs, although the search warrant affidavit did not disclose it. Although it would have been more appropriate for the affidavit to detail the deputies' experiences with clandestine methamphetamine labs, the lack of this information is not fatal to the validity of the search warrant. Austin-Bocanegra and Jacobs' argument fails because there was additional evidence presented to the issuing magistrate to establish probable cause for the search warrant.

Jacobs' Seizure

Jacobs and Austin-Bocanegra next contend that Jacobs' seizure was unlawful and, as such, required the trial court to suppress all evidence obtained from the search.

■ ■ Generally, warantless searches and seizures "are per se unreasonable." *State v. Duncan*, 146 Wn.2d 166, 171, 43 P.3d 513 (2002); WASH. CONST. art. I, § 7. But an officer may conduct a *Terry* investigative stop if he or she has "a reasonable, articulable suspicion, based on specific, objective facts, that the person seized has committed or is about to commit a crime." *Duncan*, 146 Wn.2d at 172 (emphasis omitted); *Terry v. Ohio*, 392 U.S. 1, 88 S. Ct. 1868, 20 L. Ed. 2d 889 (1968). And under *Terry*, if a police officer reasonably fears for his or her safety, but does not have probable cause to arrest, he or she may reasonably search the individual for weapons without violating the Fourth Amendment. *Terry*, 392 U.S. at 29; *Duncan*, 146 Wn.2d at 172.

While investigating Hand's tip, Hamilton and Watkins, who are both trained in clandestine methamphetamine labs, smelled chemicals as they approached the mobile home door. The chemical odor became stronger when the door was opened. Jacobs admitted using methamphetamine. Jacobs also admitted having acetone and a pressure cooker inside his home and placing chemicals in a nearby dumpster.

And both deputies saw a suspicious weapon-shaped bulge in Jacobs' front pants pocket. When Jacobs turned out his pockets, a clear film canister with white powder in it fell to the ground. The substance in the canister later field tested positive for methamphetamine.

Under *Terry*, these specific and objective facts gave the deputies a "reasonable [and] articulable suspicion" that the home contained a methamphetamine production lab. The deputies properly seized Jacobs. *Duncan*, 146 Wn.2d at 172; *Terry*, 392 U.S. at 27. And the unknown object in Jacobs' pants pocket gave rise to the deputies' suspicion that they should be concerned for their safety, allowing a *Terry* search. Jacobs and Austin-Bocanegra's argument based on a warrantless search fails.

### Insufficient Evidence

Jacobs and Austin-Bocanegra further contend that insufficient evidence supports their convictions. They assert that the State did not prove that they lived in the mobile home or that they manufactured methamphetamine.

■ To determine whether sufficient evidence supports a conviction, we use the familiar tests found in *State v. Salinas*, 119 Wn.2d 192, 201, 829 P.2d 1068 (1992) and *State v. Green*, 94 Wn.2d 216, 221-22, 616 P.2d 628 (1980). We view facts and inferences in the light most favorable to the State, and we will find the evidence sufficient if it permits a rationale trier of fact to find the essential elements of the crime beyond a reasonable doubt. We need not be convinced of a defendant's guilt beyond a reasonable

doubt, only that substantial evidence supports the State's case. *State v. Fiser*, 99 Wn. App. 714, 718, 995 P.2d 107, *review denied*, 141 Wn.2d 1023 (2000).

To convict a defendant of manufacturing methamphetamine, the State must prove that the defendant (1) intended to (2) manufacture methamphetamine. RCW 69.50.401(a). Manufacturing is "the production, preparation, propagation, compounding, conversion, or processing of a controlled substance." RCW 69.50.101(p).

According to Kimberly Hefton, a crime lab forensic scientist specializing in clandestine manufacturing of controlled substances, and Jeff Herbig, a narcotics enforcement detective, the mobile home contained evidence of a methamphetamine lab. Their testimony described the items seized as consistent with an unlawful lab, including: coffee filters stained with red liquid found throughout the house; over-the-counter cold pills and tablets; several ounces of white powder in a plastic baggy; plastic gram scale with white residue in it; a squirrel ventilation fan; iodine looking carpet stains throughout the house; Red Devil lye; an air purifying respirator; and plastic filters and funnels.

Substantial evidence also shows that both Jacobs and Austin-Bocanegra lived in the mobile home. Hand testified that both had a verbal agreement with the owner of the park to live in the mobile home, both paid rent, and neither Austin-Bocanegra nor Jacobs had notified her of their intent to vacate the premises. There was only one bedroom in the mobile home and inside this bedroom was a bassinet, baby bottle, and pictures of Austin-Bocanegra and the baby.

Austin-Bocanegra individually challenges sufficiency of the evidence, contending that her fingerprints on an acetone bottle were not enough to sustain her conviction.[2] We disagree.

---

[2] Jacobs argues that insufficient evidence supports his conviction because there was evidence that someone broke a window in his mobile home and thereafter used his mobile home to manufacture the methamphetamine. But he offers no citation to the record or substantive argument and we do not address his issue. RAP 10.3(a)(5).

 Evidence of fingerprints alone is sufficient to sustain a conviction for manufacturing methamphetamine when a trier of fact could reasonably infer from circumstantial evidence that the fingerprint on the object could have occurred only at the time the crime was committed. *State v. Todd*, 101 Wn. App. 945, 951, 6 P.3d 86 (2000), *overruled on other grounds by State v. Rangel-Reyes*, 119 Wn. App. 494, 81 P.3d 157 (2003). Here, Austin-Bocanegra's fingerprints were on a bottle of acetone, which was inside a blue bag in the utility room. The blue bag also contained a pressure cooker. And the utility room contained the methamphetamine production lab. Finally, Hefton testified that acetone pressure cooking is part of the methamphetamine production process. Sufficient evidence supports finding that Austin-Bocanegra manufactured methamphetamine.

## Sentence Enhancement

Jacobs and Austin-Bocanegra also contend that the trial court improperly imposed consecutive sentence enhancements for manufacturing methamphetamine within 1,000 feet of a school bus stop, in violation of RCW 69.50.435-(a)(3), and for manufacturing methamphetamine with a person under the age of 18 on the premises, a violation of RCW 9.94A.605. Jacobs and Austin-Bocanegra ask us to determine whether sentencing under RCW 9.94A.510 compels concurrent or consecutive enhancements.

Under RCW 9.94A.533(6), "[a]n additional twenty-four months shall be added to the standard sentence range for any ranked offense involving a violation of chapter 69.50 RCW if the offense was also a violation of RCW 69.50.435 or 9.94A.605." The trial court determined that this statute provides for multiple consecutive enhancements.

 Interpreting statutes is a question of law we review de novo. *State v. Spandel*, 107 Wn. App. 352, 358, 27 P.3d 613, *review denied*, 145 Wn.2d 1013 (2001). We con-

strue statutes to avoid rendering a provision meaningless or in ways that allow us to reach absurd results. *State v. Ritts*, 94 Wn. App. 784, 787-88, 973 P.2d 493 (1999). We do not interpret unambiguous statutory language; we interpret a statute in a manner that gives effect to the Legislature's intent. *Ritts*, 94 Wn. App. at 787-88.

Recently, our Supreme Court held that "[t]he plain language of RCW 9.94A.510 not only anticipates the imposition of multiple enhancements under a single offense but clearly insists that all firearm and deadly weapon enhancements are 'mandatory' and must be served consecutively." *State v. DeSantiago*, 149 Wn.2d 402, 418, 68 P.3d 1065 (2003) (interpreting whether a defendant could be in violation of two provisions of one statute, by committing one offense).

RCW 9.94A.510 is clear and unambiguous. If a defendant violates chapter 69.50 RCW, and RCW 69.50.435 *or* RCW 9.94A.605, sentence enhancements are mandatory. Jacobs and Austin-Bocanegra violated the law when they manufactured methamphetamine within 1,000 feet of a bus stop *and* had a person under the age of 18 present on the premises. The trial court did not err in applying Austin-Bocanegra's and Jacobs' sentence enhancements consecutively.[3]

Austin-Bocanegra's Individual Assignments of Error

Probable Cause Determination

Austin-Bocanegra individually argues that the trial court erred in using her criminal history as a factor in determining probable cause for the search warrant. Detective Elkins' search warrant affidavit briefly mentioned the existence of her outstanding Thurston County misdemeanor warrant. But there is no evidence in the record that Elkins asked the

---

[3] In their statement of additional grounds, Jacobs and Austin-Bocanegra both contend that their attorneys provided ineffective assistance because neither attorney objected to the trial court imposing consecutive sentence enhancements. Because we hold the trial court did not err, we do not address this argument.

magistrate to consider this information in seeking the warrant, nor is there anything in the record showing that the magistrate considered Austin-Bocanegra's history in determining whether sufficient probable cause existed. Her argument fails.

## Jury Instruction

Austin Bocanegra also assigns error to the trial court's refusal to give her proposed jury instruction on temporary residence and constructive possession.

 We review a trial court's decision to refuse a party's jury instruction for an abuse of discretion. *State v. Picard*, 90 Wn. App. 890, 902, 954 P.2d 336, *review denied*, 136 Wn.2d 1021 (1998). Jury instructions must permit each party to argue the theory of their case as long as substantial evidence supports the instruction, it is not misleading, and it correctly informs the jury of the law. *State v. Clausing*, 147 Wn.2d 620, 626, 56 P.3d 550 (2002); *Picard*, 90 Wn. App. at 902.

Austin-Bocanegra supports her proposed jury instruction by citing *State v. Hystad*, 36 Wn. App. 42, 49, 671 P.2d 793 (1983). The *Hystad* court stated:

> The fact of temporary resident, personal possessions on the premises, or knowledge of the presence of the drug without more is insufficient to show dominion and control necessary to establish constructive possession of the drug.

36 Wn. App. at 49 (citing *State v. Davis*, 16 Wn. App. 657, 558 P.2d 263 (1977)). But her proposed instruction was a hybridization of *Hystad*'s proper jury instruction, instead stating,

> The fact of temporary residence, personal possessions on the premises, or knowledge of the presence of an unlawful drug, without more, is insufficient to establish constructive posses-sion of such drug *or the intent to manufacture it.*

CP at 34 (emphasis added).

██ Because Austin-Bocanegra deleted the words "dominion and control" and added the words "intent to manufacture it," her proposed jury instruction was an inaccurate statement of the law and misleading. Her argument fails.

Austin-Bocanegra also contends that the trial court erred in not giving her proposed instruction when evidence was presented that the mobile home was her temporary residence. As noted, a jury instruction must be supported by substantial evidence. At trial, Jacobs' grandmother testified that Austin-Bocanegra spent almost every night at her house during the two and one-half months preceding the search. Hand also testified that she saw Austin-Bocanegra less often after the baby was born. But as we discussed with her sufficiency of the evidence argument above, there was substantial evidence that the mobile home was Austin-Bocanegra's permanent residence, not her temporary one. The judge correctly refused Austin-Bocanegra's proposed jury instruction.

## Statement of Additional Grounds

Finally, in their statements of additional grounds, Jacobs and Austin-Bocanegra argue that the trial court erred in not granting their motions for a mistrial. And they assert that judicial comments on the evidence prejudiced them because the trial court asked the jurors not to open any zip-locked bags containing evidence for fear the substances might harm the jurors' health.

██ A trial court may not comment on evidence. WASH. CONST. art. IV, § 16. An impermissible comment communicates to the jury the personal beliefs of the trial judge regarding the merits of the case or allows the jury to surmise that the judge personally believed the evidence presented. *State v. Lane*, 125 Wn.2d 825, 838, 889 P.2d 929 (1995).

██ Here, Jacobs and Austin-Bocanegra mischaracterize the judge's admonition to the jury after closing argument:

Now, ladies and gentlemen of the jury, you've been told on several occasions that you will be receiving all the exhibits that have been admitted into evidence to take with you to the jury room or actually they'll be brought in to you. Just a word of caution, and this is really common sense, but I want to say it so no one can say that they didn't understand. And, that is, you're free to look over the exhibits, that's what they're there for, but those that are packaged and sealed should not be opened. That's for your own protection and we don't want there to be any issue in that regard. There are some exhibits that are open and certainly there's [no] problem with you looking in those exhibits, but any that are sealed please do not open the seal in any way.

Report of Proceedings (December 4-5, 2001) at 366-67. This statement clearly is not a comment on the evidence, nor is it prejudicial. Jacobs and Austin-Bocanegra's argument fails.

Jacobs and Austin-Bocanegra also assert that the trial court erred in refusing their motions for mistrial, arguing that the prosecutor's refusal to share a report with the defense constituted a *Brady*-evidence doctrine violation. *Brady v. Maryland*, 373 U.S. 83, 87, 83 S. Ct. 1194, 10 L. Ed. 2d 215 (1963) (violation of due process if prosecution suppresses evidence favorable to the defendant and the evidence is material to guilt or to defendant's punishment).

Jacobs and Austin-Bocanegra argue that because the report stated that the mobile home was not contaminated and would not be destroyed, this information was exculpatory and should have been part of the trial record. But the *Brady* evidence doctrine does not apply here because whether the mobile home was contaminated was not an issue at trial.

Finally, the record indicates that the discovery materials

included the report. Thus, Jacobs and Austin-Bocanegra's argument fails.[4]

Affirmed.

HUNT, C.J., and SEINFELD, J., concur.

Review granted at 152 Wn.2d 1036 (2004).

---

[4] Jacobs and Austin-Bocanegra also argue that the prosecutor committed prosecutorial misconduct by withholding evidence from the defense, thus, violating the *Brady* doctrine. Because we find nothing in the record to review supporting this argument, there can be no prosecutorial misconduct or a *Brady* doctrine violation. Their argument fails.