IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| STATE OF WASHINGTON, Respondent, v. D.A.V., Appellant. | No. 87325-3-I DIVISION ONE UNPUBLISHED OPINION |

DÍAZ, J. — A superior court judge convicted D.A.V. of unlawfully possessing a firearm when he was 16 years old. He argues his conviction is invalid because law enforcement stopped and arrested him unconstitutionally. Disagreeing, we affirm.

I.      BACKGROUND

Around midnight one night in July 2024, Seattle Police Department officer Kyle Corcoran was on his bicycle proactively "seek[ing] out" to address "crimes for narcotics, stolen property, [and] crimes of violence" near Pike Place Market. Officer Corcoran was clearing out an alley "stack[ed] up" with at least 50 people who typically are consuming and dealing narcotics. He passed by D.A.V. who crossed in front of him with a group of three people, moving in a coordinated fashion. Their clothing appeared to be "clean, new, put together, somewhat

stylish," in contrast to the other residents of that alley. Officer Corcoran suspected the group was there to sell drugs and began to follow them. With the light on his helmet, the officer testified he saw a "shiny," "brass-colored" object sticking out of D.A.V.'s pocket, which the officer determined was a bullet seated in the top of a magazine to a pistol.

Officer Corcoran testified that the group appeared "young" and, though it was "hard to tell" because they were wearing full face masks, he thought they may be juveniles based on their "stature" and their "cleaner, stylish" and patterned clothing, as well as other "contextual things." He testified that further investigation was needed.

Officer Corcoran, suspecting D.A.V. illegally possessed a firearm, dismounted his bike and stopped D.A.V. by grabbing his left arm. Another officer grabbed his right arm and, ultimately, they took him to the ground and D.A.V. went down on his side. Three different officers then took part in restraining him and worked to control his hands and secure handcuffs on him.

In their ensuing search, the officers recovered a loaded magazine from D.A.V.'s pants as well as a firearm from inside a satchel he was wearing, and they subsequently confirmed he was under the age of 18.

Prior to trial, D.A.V. argued the police had obtained the State's evidence unlawfully, but the court denied his suppression motion. After taking the testimony of Officer Corcoran and viewing the footage from his body-camera, the court concluded he had stopped D.A.V. based on reasonable suspicion D.A.V. was a juvenile who possessed a firearm. And it concluded the officers had arrested

2

D.A.V. based on probable cause D.A.V. was criminally obstructing them before they recovered the firearm and ammunition.

D.A.V. timely appeals from the court's disposition order, which found him guilty of unlawful possession of a firearm in the second degree.

## II.    ANALYSIS

### A.    Reasonable Suspicion D.A.V. was a Juvenile

D.A.V. first claims the court erred in concluding Officer Corcoran stopped him with reasonable suspicion he was a juvenile who was potentially in unlawful possession of a firearm.

As a general rule, warrantless searches and seizures are per se unreasonable, in violation of the Fourth Amendment and article I, section 7 of the Washington State Constitution. State v. Duncan, 146 Wn.2d 166, 171, 43 P.3d 513 (2002); U.S. CONST. amend IV. However, a brief investigatory detention is an exception, if supported by reasonable articulable suspicion of criminal conduct. Terry v. Ohio, 392 U.S. 1, 10-11, 88 S. Ct. 1868, 1874 (1968). That is, a police officer may temporarily detain a person based on a reasonable suspicion that the person is or has been involved in criminal activity. State v. Mitchell, 80 Wn. App. 143, 145, 906 P.2d 1013 (1995).[1] Reasonable suspicion is determined based on an objective view of the known facts and is neither "dependent upon the officer's subjective belief [n]or upon the officer's ability to correctly articulate his or her suspicion in reference to a particular crime." Id. at 147. In deciding whether

---

[1] As relevant here, it is a felony for a person under 18 years of age to own, possess, or carry an operable firearm. RCW 9.41.040(2)(a)(C)(I)(v).

reasonable suspicion exists, courts properly consider the totality of the circumstances and any relevant factors including the location of the stop and the conduct of the person being detained, as well as an officer's training and experience. State v. Alexander, 5 Wn. App. 2d 154, 160, 425 P.3d 920 (2018).

When we review a trial court's suppression decision, we assess its conclusions of law de novo, but we treat any unchallenged findings to be true facts. State v. Ross, 106 Wn. App. 876, 880, 26 P.3d 298 (2001). This is so because our Supreme Court has repeatedly held that an appellant must assign error to "each finding of fact being challenged" in order to properly raise issues on appeal. In re Disciplinary Proceedings of Cottingham, 191 Wn.2d 450, 462, 423 P.3d 818 (2018). It explained we will not "assum[e] an obligation to comb the record with a view toward constructing arguments for counsel as to what findings are to be assailed and why the evidence does not support these findings." In re Estate of Lint, 135 Wn.2d 518, 532, 957 P.2d 755 (1998).

Here, D.A.V.'s central argument is that the court erred in concluding Officer Corcoran had reasonable suspicion he was a juvenile because "there were no *real facts* that the trial court could rely upon" to reach that conclusion. (Emphasis added). Yet, critically, he has not assigned error to *any* of the court's related findings of fact—about Corcoran, his experience, or the observations he made about D.A.V. before detaining him.

The State made this point in its briefing on appeal, arguing that, as a result, all of the relevant factual findings are verities for purposes of our review. In reply, D.A.V. makes no argument in response. Indeed, at oral argument, his counsel

acknowledged the unchallenged findings are verities. Wash. Ct. of Appeals oral argument, State v. D.A.V., No. 87325-3-I (Feb. 27, 2026), at 1 min., 58 sec. through 2 min., 1 sec. video recording by TVW, Washington State's Public Affairs Network, https://tvw.org/video/division-1-court-of-appeals-2026021070/?eventID=2026021070.[2]

In turn, although we review the court's legal determination de novo that "Corcoran had reasonable articulable suspicion [D.A.V.] was a juvenile based on his observations of Respondent's stature and dress", we must treat the related facts the court found as true. Ross, 106 Wn. App. at 880.

Those facts included:

4. Ofc. Corcoran had extensive experience with . . . the individuals commonly located in the area around the 3rd Avenue and Pike Street intersection.

5. Ofc. Corcoran observed that the group of males he was following appeared to be young based both on their small stature and their dress.

6. The males were wearing newer, cleaner clothing of a style that Ofc. Corcoran, in his experience, associated with juveniles.

7. Despite the fact that this incident occurred in July, the males were also wearing full face balaclava-style ski masks with patterns and designs.

---

[2] Specifically, his counsel acknowledged that the unchallenged findings make his claim of error as to reasonable suspicion more of an "uphill climb" or the "harder row to hoe" in his appeal. Wash. Ct. of Appeals oral argument, supra at 2 min., 39 sec. through 2 min., 43 sec. video recording by TVW, Washington State's Public Affairs Network, https://tvw.org/video/division-1-court-of-appeals-2026021070/?eventID=2026021070; Id. at 2 min., 53 sec. through 2 min. 59. And he explained he chose not to challenge the court's factual findings on this issue because the substantial evidence standard is "often difficult to overcome" and "here, there was at least some evidence that the trial court could have looked at to support those factual findings." Id. at 3 min., 17 sec. through 3 min., 34 sec.

8. Respondent was wearing a full-face ski mask with a white camouflage and skull pattern.

9. Based on his observations of the group's stature and dress, Ofc. Corcoran believed that the group he was following were likely juveniles.

Taking these findings as verities, the court did not err by concluding Officer Corcoran had some specific, articulable basis to stop D.A.V. under the reasonable suspicion he was a juvenile. What's more, by failing to challenge the findings above, D.A.V. has effectively conceded that Officer Corcoran's suspicion D.A.V. appeared youthful was reasonable, based on his experience in the area and his specific observations.

Stated otherwise, D.A.V.'s claim is unavailing because the unchallenged findings do not solely reference Officer Corcoran's subjectively held beliefs. Mitchell, 80 Wn. App. at 147. They indicate the court permissibly based its determination of reasonable suspicion on objective facts Corcoran noticed about D.A.V.'s stature (whether his relative size or body shape) and about D.A.V.'s clothing (the style, particular design, and condition), as informed by his experience and familiarity with the people frequenting the area. Alexander, 5 Wn. App. 2d at 160. Thus, this assignment of error fails.[3]

---

[3] When questioned at oral argument, the State admitted "none" of the facts about D.A.V.'s stature and clothing which Officer Corcoran observed "*individually* would suffice" to suspect he was a juvenile. Wash. Ct. of Appeals oral argument, supra at 10 min., 37 sec. through 10 min., 39 sec. (emphasis added). But it argued the totality of circumstances and facts known to Officer Corcoran, as an experienced officer, justified his suspicion D.A.V. might be a juvenile. Id. at 10 min., 40 sec. through 11 min., 4 sec. It surmised, "in a sense, it's a credibility determination that the officer had that impression based on these specific things that he saw." Id. at 11 min., 22 sec. through 11 min., 28 sec. It then reiterated those things were

B.    Probable Cause D.A.V. Obstructed Law Enforcement

D.A.V. also challenges the court's legal conclusion that his arrest was supported by probable cause for obstruction, in predominant part because he avers there is no substantial evidence for its finding he struggled and resisted the officers while knowing they were law enforcement.

A warrantless arrest must be supported by probable cause to be lawful. State v. Grande, 164 Wn.2d 135, 141, 187 P.3d 248 (2008); see also Mitchell, 80 Wn. App. at 145 (holding that, when a stop exceeds the duration and intensity of a temporary detention, it can be justified only by a showing of probable cause). Probable cause exists when the arresting officer is aware of facts and circumstances sufficient to cause a reasonable officer to believe a suspect has committed or is committing a crime. State v. Afana, 169 Wn.2d 169, 182, 233 P.3d 879 (2010). However, an arresting officer need not have evidence to prove each element of a crime beyond a reasonable doubt at the time of arrest; rather, they must have knowledge of facts sufficient to cause a reasonable person to believe an offense had been committed. State v. Gaddy, 152 Wn.2d 64, 70, 93 P.3d 872 (2004).

In our review of a trial court's suppression decision, we assess whether

---

enough in combination, while acknowledging a second time that they were "individually definitely really, really thin." Id. at 11 min., 22 sec. through 11 min., 37 sec. On the briefing and the totality of the unchallenged circumstances before us, we are compelled to agree, and D.A.V. has simply not cited any authority to the contrary. Alexander, 5 Wn. App. 2d at 160; DeHeer v. Seattle Post-Intelligencer, 60 Wn.2d 122, 126, 372 P.2d 193 (1962) ("Where no authorities are cited in support of a proposition, the court is not required to search out authorities, but may assume that counsel, after diligent search, has found none.").

substantial evidence supports any challenged findings of fact and whether its findings support its conclusions of law. Alexander, 5 Wn. App. 2d at 159. Substantial evidence is evidence sufficient to persuade a fair-minded, rational person of the truth of the finding. State v. Vickers, 148 Wn.2d 91, 116, 59 P.3d 58 (2002). It is the party challenging a finding of fact who bears the burden of demonstrating the finding is not supported by substantial evidence. Id. And, while examining factual findings for substantial evidence, we defer to the trier of fact on issues of witness credibility and the persuasiveness of evidence. State v. Roberts, 5 Wn.3d 222, 234, 572 P.3d 1191 (2025). In other words, we do not weigh evidence or substitute our opinions for those of the fact finder. Id. at 235.

A person who "willfully hinders, delays, or obstructs any law enforcement officer in the discharge of his or her official powers or duties" commits the crime of obstruction. RCW 9A.76.020.[4]

Here, the court made several written factual findings about D.A.V.'s arrest, of which he only challenges finding of fact 22; namely:

> 19. Immediately after Ofc. Corcoran grabbed Respondent's arm, Respondent *tensed his body*, *tried to run*, *tried to break* from Ofc. Corcoran's grip, *fell down on his side*, and began screaming and yelling.

> 20. At that point, two other officers joined Ofc. Corcoran in attempting to physically control Respondent.

---

[4] We note that, in State v. D.E.D., this court concluded a suspect's actions during an investigatory detention did not constitute obstruction because he had merely "passively resisted being handcuffed." 200 Wn. App. 484, 487-88, 497, 402 P.3d 851 (2017). However, we held that "[m]ore active resistance" might rise to the level of obstructing. Id. at 496. And we have since reiterated that additional "activity on top of passive resistance" can amount to obstruction. State v. Canfield, 13 Wn. App. 2d 410, 418-19, 463 P.3d 755 (2020).

21. During the struggle to restrain Respondent, Ofc. Corcoran and his fellow officer involved in this incident *verbally identified themselves* as police officers at this point and *were readily identifiable* as such from their uniforms.

22. Respondent continued to struggle and resist being detained even after the officers identified themselves.

(Emphasis added).

The court's written ruling also incorporated the oral findings it made at the suppression hearing. In relevant part, it had stated D.A.V. "continued to resist *to some level*" while he was on the ground with the officers, and "the officers had done some wrestling around and ordering things to happen that weren't happening[.]". (Emphasis added). From those findings, it concluded the officers had "reaso[n] to believe that during the struggle to restrain [D.A.V.], [D.A.V.] knew that the people he was interacting with were law enforcement officers as a result of their verbal announcements and their uniforms, and further that [D.A.V.]'s resistance was willfully hindering or delaying their lawful investigatory detention."

We hold that there was substantial evidence for the court's finding that D.A.V. struggled against known law enforcement based on two sources. First, the court heard testimony from Officer Corcoran. He testified that when he and his partner placed their hands on D.A.V., he had tensed, tried to break away from their grip, and tried to run before being brought to the ground. And even "at that point," D.A.V. did "not initially" comply with his detention. The Officer explained:

He *still* tensed his arms. He resisted. He – he kind of went down on his side. So he was – he's screaming and yelling at us. We were in control. Well, like we weren't by definition, in control, but we were very quickly able to gain a position of advantage over him. In particular, we were controlling his hands.

9

(Emphasis added). From this testimony, a fair-minded rational person could conclude that at some point during this interaction, D.A.V. contorted his arms, hands, or body in a manner which constituted resistance and which, as the court found, prompted three officers to take measures to control his movements. D.A.V. did not challenge this finding, i.e., number 19.

Second, the court also viewed footage from Officer Corcoran's body camera. The video shows it took approximately one minute for multiple officers to secure handcuffs on his hands after he was taken to the ground. In other words, as in Officer's Corcoran's testimony, a reasonable judge could conclude that at least some moments may have passed before D.A.V. fully complied with law enforcement, who were in police uniforms and wearing head lights.

We may not substitute our judgment for the trial court's with respect to either of these sources of evidence—neither with regard to the credibility of Corcoran's testimony nor the persuasiveness of the footage from his body-camera. Roberts, 5 Wn.3d at 234-35.

D.A.V. responds the court acknowledged it was "reasonable and expected" he had tensed and tried to get away at first, when he was contacted from behind. He thus appears to contend that any part of the way he reacted to being grabbed was only natural and could not serve as a basis to find probable cause. But while he may well have been surprised and distressed, that does not mean the court could not reasonably interpret his subsequent actions as at least momentary resistance.

In short, D.A.V. has not shown the court lacked a basis in the evidence to

rationally find D.A.V. was, at some point in time during the interaction, resistant toward the officers, such that they had probable cause to arrest him for obstruction. Vickers, 148 Wn.2d at 116; Alexander, 5 Wn. App. 2d at 159.[5]  Therefore, this assignment of error fails as well.

### III.    CONCLUSION

We affirm.

Díaz, J.
_____

WE CONCUR:

_____          _____

---

[5] D.A.V. also avers the court separately erred by failing to clearly identify the moment when his detention became an arrest.  It is true the court stated that "the line between a [sic] elevated-restraint investigatory detention and formal arrest is slightly unclear," but it concluded he was under arrest by the time he was handcuffed and led to the patrol car.  Moreover, D.A.V. does not cite any legal authority for the proposition a court must identify precisely when a stop turns into an arrest.  See DeHeer, 60 Wn.2d at 126.

D.A.V. also makes the related argument he was legally arrested the moment he was taken to the ground, and there was no probable cause for obstruction at that point because he had not yet taken any action in response to people he knew were officers.  He relies on State v. Pines for the proposition he was legally arrested as he was tackled and therefore arrested without probable cause.  17 Wn. App. 2d 483, 493, 496, 487 P.3d 196 (2021).  However, the court made certain unchallenged findings here which make this case distinct from Pines and undermine his argument.  Namely, the fact that it found he had initially tensed, pulled away, and tried to run when he was first touched signifies there was at least a brief pause before he was tackled.  D.A.V. inadvertently concedes the point by asserting "there was no *significant* amount of time where [he] could have been aware" the officers were law enforcement and yet kept resisting.  (Emphasis added).  Ultimately, he fails to establish no rational person could conclude he engaged in at least minimal resistance to known law enforcement at some point before he was placed under arrest.